No. 618

First Circuit

BROOKS v. CONTINENTAL CASUALTY COMPANY

(May 6, 1930. Opinion and Decree.)
(June 9, 1930. Rehearing Refused.)
(July 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Benton & Benton, of Baton Rouge, and E. J. Whitehead, of Port Allen, attorneys for plaintiff, appellee.

Chas. A. Holcombe, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. The defendant company issued an insurance policy for $1,000 to Moses Brooks, who was killed in December, 1927, by J. A. Legendre, deputy sheriff.

Plaintiff, Sequeener Brooks, his beneficiary, obtained judgment against defendant company for $1,000, the amount of the insurance, from which it appeals.

Mr. Legendre, the deputy sheriff, having been notified that a negro had been held up and robbed at the Gulf Coast Yards near Anchorage, went there at about 9 o'clock at night looking for the robbers. He says he came across two men who tallied with the description he had of the holdup men, and, so thinking, made an effort to stop them by saying "wait there boys." He says instead of stopping they started in a run, that he fired four shots, the last striking Moses Brooks, the insured. He makes it very plain that when he shot he did not know who were these men. He walked up to the man that had fallen, and when he got to him found out that it was Moses Brooks he had shot. He knew him quite well, and says if he had recognized Brooks he would not have fired at all. It is clearly shown that he fired because he believed they were the holdup men. He says, when he shot, his intention was to stop them by hitting them in the legs, which is the usual method followed by officers under like circumstances. Instead of hitting Brooks in the legs, as he intended, he was struck above the hip in the small part of the back, causing his death soon after. He explains that Brooks was running up the levee when he fired, which

accounts for the fact that he was hit in the lower part of the back instead of the legs, where he intended to shoot him.

A correct solution of this case depends, as we see it, to a large extent on a proper interpretation of the decision of the Supreme Court in the case of Brown vs. Continental Casualty Company, 161 La. 229, 108 So. 464, 466, 45 A. L. R. 1521, although counsel for defendant company, in a very able brief, contends that it has no application.

The suit in that case was, as in this, on an insurance policy for $1,000 indemnity for loss of life by accidental means. The policy in that case was on the life of Dr. Brown who died in consequence of inhaling too much chloroform, which he used to relieve headache and insomnia. The second defense in that case, which we find to be pertinent to the issue here presented, was that, although the death of the insured was unexpected, unintentional, and accidental, the means which caused the death was intentional and not accidental, the condition of the policy being not that the death itself should be accidental, but that it should be caused by accidental means to make the company liable for the indemnity.

The introductory clause to the policy in the instant case says:

"The insurance given by this policy is against loss of life (suicide or self destruction while either sane or insane not included) limb, limbs, sight or time resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event etc."

It provides further in paragraph 2 of part X, designated as miscellaneous provisions, as follows:

"This policy does not cover any loss" upon certain conditions which are enumerat-

ed in 4 exceptions of nonliability. In exception No. 3, which is the only one of the 4 enumerated exceptions pertinent to the issue here presented, and which refers to the loss the insured might suffer, we find the following proviso:

"If the injury causing it results from the intentional act of the insured or of any other person etc."

This clause evidently refers to the loss of life, limb, limbs, and sight mentioned in the introductory clause of the policy, and in the beginning of paragraph 2 part X heretofore referred to.

In the case of Brown vs. Continental Casualty Company, supra, the court, in referring to the second defense therein presented, to which we have above referred, says:

"Appellant's second defense, that, under a policy providing indemnity for loss of life 'by accidental means,' the company is not liable for an accidental death, unless the means which caused the death was unintentional, seems to be sustained by very high authority in other states."

The court then proceeds to discuss some of the cases where that doctrine was maintained. It refers in particular to the case of Lehman vs. Great Western Association, 155 Iowa, 737, 133 N. W. 752, 754, 42 L. R. A. (N. S.) 562, in which it says it was maintained that it is "not sufficient that there be an accidental—that is, an unusual and unanticipated—result. The means must be accidental; that is, involuntary and unintended."

The court in the Brown case would not accede to the doctrine that, to entitle the beneficiary to recover in such a case, the means must be accidental, involuntary, and unintended. In that case it appeared that Dr. Brown had by mistake taken an overdose of chloroform, which had caused his death. In referring to that fact, the court said:

"The means or cause of his death was not that he intentionally inhaled chloroform, which he had done many times before, but that he unintentionally inhaled too much chloroform."

In that statement of the court it is clearly pointed out that Brown intentionally or voluntarily inhaled the chloroform, but had unintentionally taken an overdose. It was the result of the act which was unintentional or unexpected that constituted the accident. In that respect the court would not accept the ruling of the courts to which it made reference, where it had been held that the means must be accidental and that it was not sufficient when there was "an accidental, unusual and unanticipated result."

In this case the means employed, that is, the firing of the gun, was intentional, but it is clearly shown that the purpose Legendre, the deputy sheriff, had in mind at the time, was merely to shoot the fugitives in the legs to stop them in their flight. He certainly did not intend to strike Brooks in the back, and to take his life. Though the shooting was intentional, the killing or the result was altogether unintentional and accidental, as was the case with Brown who had intentionally taken the chloroform, but had "unintentionally inhaled too much."

Counsel for defendant says in his brief "that the loss here was the result of the intentional act of a third party." This defense of counsel is evidently grounded on paragraph 2 of part X, which says this policy does not cover any loss under the third enumerated exception, where we find this provision, above referred to:

"If the injury causing it results from the intentional act of the insured or of any other person etc."

The taking of the chloroform by Dr. Brown was certainly an intentional act, but it was the result which was altogether unintentional and unexpected, and the death was therefore an accident according to the ruling in the Brown case. If, in the case of Brown, the chloroform had been administered by another physician or any other third party to relieve the headache, and had, from the effects of an overdose given by mistake resulted fatally, it seems to us quite evident, as his death would have likewise been unintentional and unexpected, the same principle would have been applied. In either case the act would have been intentional, but the result likewise unintentional, unanticipated, and accidental.

Counsel for plaintiff has referred us to many decisions from other states, where the courts had occasion to construe a clause of non-liability in reference to insurance companies, wherein it was provided, as follows:

In the construction of a proviso of that character those courts have about uniformly held that the company is not exempted from liability where the party shooting intended to shoot some one else, and by mistake shot the party injured or killed. Here it is unquestionably shown that Legendre intended to shoot holdup men, and by mistake shot the unfortunate Moses Brooks.

Under the authorities cited by plaintiff's counsel, it is held that an insurance company cannot claim immunity from liability under such a clause. On the other hand, counsel for defendant contends that the provisos in the policies passed upon in the adjudication cited by counsel for plaintiff are not similar to the one enumerated in exception 3 of the policy in this case. Here he contends it is the "intentional act vel non that is involved. In other words, not whether Brooks was the real robber, but whether Legendre intentionally inflicted an injury upon him, regardless of who he was." In support of that contention he refers to many decisions from courts of other states. He refers particularly to the case of Fernando vs. Continental Casualty Company, 169 Minn. 53, 210 N. W. 634, where the policy contains in exact words the proviso we have in the policy in this case, which refers to an injury where it results from the intentional act of the insured or of any other person.

In that case, Boone, the insured, was killed by a woman with whom he had been on friendly terms. The suit for indemnity was brought by his beneficiary. During a quarrel Boone and the woman both started for a gun which was in a trunk. The woman got the gun and shot Boone. The court said whether she intended to kill was unimportant. Boone's death, says the court, was the result of an "intentional act," and came within the exception of the policy. It is evident that the shot was intentionally directed at Boone. Not so here, as it appears the shooting which constituted the "intentional act" was aimed at supposed robbers, and not at Moses Brooks.

Another case, Continental Casualty Company vs. Klinge, 82 Ind. App. 277, 144 N. E. 246, where it appears that one Winniger, while in company with another, undertook to remove a tire from an automobile. On the approach of Wagner, an officer, the two fled, refusing to halt. Wagner shot and killed the insured. In answer to a question propounded to Wagner, he answered that he intended to hit him. The court held that the injury was the result of the in-

tentional act of the officer, and that the company was protected by the exemption provided for in the exception.

In that case it does not appear that the officer did not intend to kill and fired merely to stop the party, but that he had accidentally killed him, which is the case here, as appears from the uncontradicted testimony of Legendre hereinabove referred to.

It may be that there is a substantial divergence of opinion between the courts on the proposition we have been discussing as contended for by counsel for plaintiff, or that there is no conflict in the adjudications where a proviso, similar to that at bar, exists, as claimed by counsel for defendant. The fact remains, however, that, under the decision of our court in the Brown case, as we construe it, where the act is voluntary or intentional, but the result is unintentional, unexpected, or unanticipated, the insurance company is liable under the terms of the policy.

The criterion of responsibility is based, as we see it, on the unintentional result, and the intentional act, whether of the insured or of a third party, calls for no distinction in the application of the rule followed in that case. It is possible that we have fallen into an error in our appreciation of the meaning of the court in the Brown case, and which has led us to the conclusions arrived at in this case. We think, however, that we have properly applied the doctrine therein announced to the facts herein presented which, as we see them, entitled plaintiff to a recovery as was held below.

ELLIOTT, J. (concurring). The decision of the issue involved in this case, does not depend on the interpretation of any of our acts on the subject of accident insurance. 1898, No. 105; 1906, No. 115; 1908, No. 172; 1910, No. 310; 1912, No. 256; 1914, No. 287; or 1920, No. 17.

The case Brown vs. Continental Casualty Co., 161 La. 229, 108 So. 464, 45 A. L. R. 1521, is pertinent, still there is some difference. In that case the insured intentionally took a dose of chloral and unintentionally took too much of it.

In this case Deputy Sheriff Legendre, intentionally aimed and fired at a man fleeing from him in the dark. As he intentionally shot the fleeing man, the result of the shooting may be also regarded as intentional, but at the time he aimed and fired, he did not know who it was that was fleeing, and did not know that it was Moses Brooks until he went up to where he had fallen.

If he had known that it was Moses Brooks that was fleeing, he would not have shot him. In this case the injury was unintentional, in so far as the act of shooting, specifically applied to Moses Brooks, because there was no particular intent directed at him, and he was not the known object of the shot. The policy is also a Louisiana contract and our Civil Code, arts. 1945 et seq. furnish rules for ascertaining the intent of the parties to it, as to matters not plain, and in a doubtful provision the interpretation should be against the insurance company. Civil Code, art. 1957.

The entire policy is to be consulted where the intent is a matter of doubt. It commences with a provision for indemnity, caused by accidental injury. It promises to pay Moses Brooks or his beneficiary, on account of injury "resulting from bodily injury which is effected solely and independently of all other causes by the hap-

pening of an external violent and purely accidental event, to the extent hereinafter provided."

The non-liability proviso being:

If the injury causing it results from the intentional act of the insured, or any other person, etc.

It seems to me to be the reasonable understanding of the promise, that the insured is entitled to recover, where the injury was not specifically and particularly directed at him, because if it was not, then he was not the intentional recipient of the act.

The reasoning in the cases cited by plaintiff, General Accident F. & L. Assurance Corp., Ltd., vs. Laura Hyams, 77 Ill. 20, 185 P. 1085, 8 A. L. R. 318, and Interstate Business Men's Accident Assn. vs. Lester, (C. C. A.) 257 Fed. 225, are in line with my views on the subject.

The case Travellers Ins. Co. vs. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 1361, 32 L. Ed. 308, was based on a policy, which, quoting from the decision, read, so far as pertinent, "Intentional injuries inflicted either by the insured, or by some other person," etc.

The reasoning supports defendant's contention, but not fully, because in that case it appeared that McConkey either committed suicide or was murdered, and the court considered it permissible to infer that he had been murdered, and that recovery could not be allowed because the injury was specifically aimed at McConkey which is not the situation in this case.

In this case, as already stated, there was absent a particular, specific intent to injure Moses Brooks.

For the foregoing reasons, I respectfully concur in the decree.