# Richmond

## Virginia Farm Bureau Mutual Insurance Company v. Mary Anne Saccio.

December 2, 1963.

Record No. 5648.

Present, All the Justices.

The opinion states the case.

*Harry D. Sizemore* and *G. Kenneth Miller* (*Bean, Sizemore & Harper; May, Garrett, Miller, Newman & Compton*, on brief), for the plaintiff in error.

*Robert J. Dimond* (*George M. Giammittorio; Garnett, Hunter & Dimond; Bendheim, Fagelson, Bragg & Giammittorio*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Mary Anne Saccio, on September 22, 1960, recovered a judgment in the Circuit Court of Arlington County against Ronnie Gene Smith for the sum of $14,000.00 for personal injuries sustained by her as the result of the negligent operation of a motor vehicle by Smith. Execution on this judgment was issued and was returned by the sheriff of Arlington county marked, "No property found out of which to make a levy."

On February 9, 1961, Miss Saccio, who will be referred to as the plaintiff, filed a motion for judgment against Virginia Farm Bureau Mutual Insurance Company, the defendant. This motion alleged

that the defendant was liable to the plaintiff for the amount of her judgment against Ronnie Gene Smith by reason of an assigned risk automobile liability insurance policy issued by the defendant to Edward Ray Smith, covering a 1953 Chevrolet automobile owned by Edward Early Smith. The motion alleged that the policy covered Edward Ray Smith in his operation of the vehicle and those operating it with his permission. It was further alleged that Ronnie Gene Smith was, at the time of the accident, operating the vehicle with the permission of Edward Ray Smith and Edward Early Smith.

The defendant filed a plea in abatement, asserting that the action could be maintained against it only in the city of Richmond. This plea was overruled and thereafter the defendant filed its grounds of defense, denying liability to the plaintiff and asserting that the policy in question was procured by Edward Ray Smith through fraud and misrepresentation and that the policy had been cancelled as of the date of its issuance.

When the case was called for hearing, the plaintiff moved for summary judgment against the defendant. After argument, this motion was granted and final judgment was entered against the defendant for $14,000.00. The defendant is here on a writ of error.

The questions to be determined are:

1. Did the court err in overruling the defendant's plea in abatement?

2. Did the court err in granting summary judgment in favor of the plaintiff?

In its plea in abatement, the defendant alleged that it was a Virginia corporation; that its principal office and registered office were in the city of Richmond; that neither its chief officer nor any of its other officers resided in Arlington county; that the cause of action sued upon arose in the city of Richmond, and that, therefore, the Circuit Court of Arlington County, "should not have or take further cognizance of the action."

The defendant relied on Code, § 8-38 (2) which provides that an action against a corporation may be brought where, "its principal office or registered office is, or wherein its mayor, rector, president, or other chief officer resides."

It is true that Code, § 8-38 (2) establishes, generally, the venue of actions and suits against corporations, but the venue there provided is not exclusive. Code, § 8-39 provides that, "[a]n action or suit may be brought in any county or city wherein the cause of

action, or any part thereof, arose, although none of the defendants reside therein." This latter statute is applicable to actions or suits against corporations as well as those against individuals.

Code, § 38.1-380 provides that:

"No policy or contract insuring against liability for injury to or the death of any person, or against liability for injury to or destruction of property, shall be issued or delivered in this state unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(2) A provision that in case execution on a judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall be returned unsatisfied, *then* an action may be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under the policy or contract." [Emphasis added].

The defendant's policy contained a provision substantially complying with the statutory requirement.

In *Norfolk & W. R. Co.* v. *Crull,* 112 Va. 151, 154, 70 S. E. 521, we said, quoting from *Bank* v. *Lacombe,* 84 N.Y. 367, 384, 38 Am. Rep. 518:

"The cause of action arises when that is not done which ought to have been done; or that is done which ought not to have been done. But the time when the cause of action arises determines, also, the place where it arises, for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises."

In her motion for judgment, the plaintiff alleged that her damages had been sustained during the life of the defendant's policy. It was stipulated that she had recovered judgment therefor against the defendant's insured in Arlington county and that execution thereon had been returned unsatisfied in that county.

Thus, the plaintiff's cause of action arose *when* the execution was returned unsatisfied and it arose *where* the execution was so returned—in Arlington county. The defendant's plea in abatement was properly overruled.

When the motion for summary judgment was argued before

the trial court, the defendant offered, but was not allowed, to present evidence in support of the contentions in its grounds of defense. The court, in granting summary judgment, ruled, as a matter of law, that:

1. An insurance company, which has issued a liability policy under the Virginia Automobile Assigned Risk Plan, cannot declare that policy void *ab initio* on the ground of fraud in the procurement.

2. The filing, by an insurance company, of a form SR-21 estops the company from denying coverage under its policy listed in such form.

The admissions in the pleadings, the stipulations and the exhibits before the trial court, upon the motion for summary judgment, show that on October 29, 1959, Edward Ray Smith, who was then 18 years of age, applied for automobile liability insurance under the Virginia Automobile Assigned Risk Plan. The application was taken by Harold H. Harper, a licensed insurance agent or broker, and forwarded to the manager of the Plan in Richmond. The application was then sent by the manager to the defendant, which issued the policy on November 6, 1959.

In his application, Edward Ray Smith stated that he was, or soon would be, the registered owner of the automobile upon which he sought coverage; that he had no convictions for traffic violations other than for operating without a Virginia permit and passing a stop sign in August, 1959; that he was the only male operator of the vehicle resident in his household under the age of 25, and that he would operate the vehicle 100% of the time.

On November 29, 1959, the vehicle listed in the application and described in the policy was involved in the collision in which the plaintiff sustained her injuries. Ronnie Gene Smith, the brother of Edward Ray Smith, was operating the Smith vehicle at the time of the accident.

The defendant was given immediate notice of the accident and on December 7, 1959, it filed an SR-21 form with the Division of Motor Vehicles stating that its policy, issued to Edward Ray Smith, was "in effect" on the date of the accident and applied to the owner, Edward Ray Smith, and the operator, Ronnie Gene Smith.

The defendant claimed that it had discovered, through an investigation conducted subsequent to the filing of the SR-21 form, that the vehicle was not owned by its insured, Edward Ray Smith, but by his father, Edward Early Smith, and that there was no intention

that Edward Ray Smith would soon become the owner; that Edward Ray Smith had been convicted of speeding within six months of the date of the application, although he had stated in the application that he had not been convicted of speeding; that Ronnie Gene Smith was a resident in the same household as Edward Ray Smith, was under 25 years of age, was an operator of the insured vehicle, had a record of traffic convictions and had had his operator's license revoked, all of which Edward Ray Smith failed to disclose in his application.

On December 23, 1959, the defendant, with the approval of the manager of the Assigned Risk Plan, gave Edward Ray Smith notice that the policy was cancelled effective as of the date of its issuance, November 6, 1959, for the reason that the applicant was, "not eligible for assignment." The defendant refunded the full premium to Edward Ray Smith, which he accepted.

On September 15, 1960, the defendant wrote to the Division of Motor Vehicles and requested permission to withdraw the SR-21 form which it had filed. Such permission was refused because, "the ninety day period during which this Division could act has long since passed."

When Miss Saccio filed her motion for judgment against Ronnie Gene Smith, the defendant refused to defend the action, denying liability under its policy.

We now turn our attention to the question of whether an insurer, for fraud in the procurement, may declare void *ab initio* a policy issued pursuant to the provisions of the Virginia Automobile Assigned Risk Plan.

Code, § 38.1-336 provides as follows:

"All statements, declarations and descriptions in any application for a policy of insurance or for the reinstatement thereof shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

We said in *State Farm Mutual v. Butler, Adm'r*, 203 Va. 575, 578, 125 S. E. 2d 823:

"In applying this statute we have repeatedly said that misrepresentations of facts material to the risk assumed in an application for in-

surance render the contract void. *Scott* v. *State Farm Mut. Automobile Ins. Co.*, 202 Va. 579, 582, 118 S. E. 2d 519, 522; *Fidelity Bankers Life Ins. Corp.* v. *Wheeler*, 203 Va. 434, 125 S. E. 2d 151; *Inter-Ocean Insurance Co.* v. *Harkrader*, 193 Va. 96, 100, 67 S. E. 2d 894, 897; *North River Insurance Co.* v. *Atkinson*, 137 Va. 313, 321, 119 S. E. 46."

Our inquiry must be whether the legislature has abrogated the rule recognized in the *Butler* case with respect to the type of policy before us or whether the agreement of the carriers, expressed in the Plan, has such effect.

It may be said that, in Virginia, there are three classes of automobile liability risks, namely: "desirable risks", "statutory risks", and "poor risks".

In the first class, the "desirable risks", are those who are, in all respects, eligible for insurance and who desire, but are not legally compelled, to procure coverage. The carriers are freely willing to grant coverage to this group. The members of this class are subject to the rule of the *Butler* case, *supra*.

The second class, the "statutory risks", is composed of those who may or may not desire, but who, in any event, are legally compelled, to procure liability insurance, or to furnish other proof of financial responsibility, pursuant to the provisions of the Motor Vehicle Safety Responsibility Act, Code, §§ 46.1-388 to 46.1-514. In this class are those who have lost their driving privileges as a result of their convictions of certain offenses or their failure to pay judgments arising from their negligence in automobile accidents. As a condition precedent to the restoration of their driving privileges, the members of this class are required, by the Act, to furnish proof of their future financial responsibility, which may be in the form of liability insurance with prescribed limits of coverage.

The insurance carriers doing business in this state are compelled, by the Act, to afford coverage to those persons required to furnish proof of future financial responsibility when such risks are assigned to them by the State Corporation Commission, pursuant to the provisions of Code, §§ 46.1-497 to 46.1-503. These statutes empower the Commission to establish rules, regulations and rates applicable to such assignments.

Policies issued pursuant to the Act are termed "certified policies", Code, § 46.1-471, and the carriers' rights of cancellation and defense are narrowly restricted. The Act provides that every policy shall

be subject to the provisions: (1) that the liability of the carrier becomes absolute when loss or damage covered thereby occurs, Code, § 46.1-511 (a); (2) that, "no policy shall be cancelled or annulled, as respects any loss or damage, by any agreement between the carrier and the insured after the insured has become responsible for the loss or damage and any attempted cancellation or annulment shall be void", Code, § 46.1-511(b), and (3) that, "no statement made by the insured or on his behalf and no violation of the terms of the policy shall operate to defeat or avoid the policy so as to bar recovery within the limits provided in this chapter," Code, § 46.1-511(f).

Thus, the legislature, with respect to "statutory risks" has, in the Safety Responsibility Act, substantially modified the rule recognized in the *Butler* case. It is of crucial importance, however, to note that the policy before us was not a certified policy issued pursuant to this Act and did not become subject to its restrictive provisions relating to cancellation and avoidance. Code, § 46.1-509; *State Farm Ins. Co.* v. *Arghyris,* 189 Va. 913, 931, 55 S. E. 2d 16.

The third class, the "poor risks", is composed of those who desire, but are not legally compelled, to procure liability insurance but who, for one reason or another, are unable to procure coverage through ordinary means. The Virginia Automobile Assigned Risk Plan was devised, we are told, to provide relief to this group.

The Plan, under which the policy in question was issued, is a voluntary agreement entered into by the insurance carriers doing business in Virginia. The agreement of the carriers, embodying the Plan, is an exhibit in the record before us. The agreement provides that the Plan should be effective when all carriers licensed to write direct automobile liability insurance in Virginia have become subscribers thereto. The purposes of the Plan are stated to be to make auto liability insurance coverage available subject to the conditions of the Plan and to establish a procedure for the equitable distribution of risks assigned to insurance companies. The agreement provides for the amendment of the Plan by the subscribing members.

The Plan is administered by a governing committee, composed of members selected from the insurance industry, and a manager, appointed by the committee.

The Plan provides that, as a prerequisite for consideration for assignment, an applicant must certify that he has unsuccessfully attempted to procure automobile liability insurance within sixty days of the date of his application. Upon such certification, the

applicant, "shall be considered for assignment upon making application in good faith to the Plan. The applicant shall be considered in good faith if he reports all information of a material nature, and does not wilfully make incorrect and misleading statements in the prescribed application form."

It is further provided that an applicant is not entitled to insurance if he, or anyone who usually drives the automobile has, among other things, been convicted, within the preceding 36 months, of certain offenses.

The application for insurance is on a form prescribed by the Plan. It states that, "applicant cannot secure coverage on a vehicle unless he is or soon will be the registered owner." The form provides for a full disclosure of the prior driving record of the applicant and anyone who usually drives the applicant's vehicle.

When a properly completed application for insurance, accompanied by the full premium, is received by the manager of the Plan, he designates a carrier to which the risk is assigned. The carrier, unless it rejects the application, must issue a policy or binder within two working days.

Section 18 of the Plan provides for the cancellation of a policy in the following language, so far as is pertinent here:

"A carrier which has issued a policy or binder under this Plan shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured

. . . . . . . . . . . . . . . .

"(4) has obtained the insurance through fraud or misrepresentation . . .

. . . . . . . . . . . . . . . .

"Each such cancellation shall be on a pro rata basis, subject to the minimum charge of $10.00 per policy, and a copy of each such cancellation notice shall be furnished to the producer of record. A statement of facts in support of each such cancellation shall be furnished to the Manager, except in the case of cancellation for non-payment of premium, ten days prior to the effective date of cancellation.

"Cancellation shall be effective on the date specified and coverage shall cease on such date."

A person who has been denied insurance or whose policy has been cancelled has, under the Plan, the right of appeal to the governing

committee. Edward Ray Smith did not take an appeal from the defendant's action in cancelling his policy.

The trial court's ruling that the defendant could not declare its policy void *ab initio* was based on the provisions of § 18 of the Plan.

In its ruling, the court said that it was guided by the case of *Aetna Casualty and Surety Company* v. *O'Connor,* 8 N. Y. 2d 359, 207 N. Y. S. 2d 679, 170 N. E. 2d 681, where it was held that the New York Assigned Risk Plan had abrogated the insurer's common law right to void a policy from its inception on the ground that it had been obtained through fraud or misrepresentation. The provisions of the New York plan are similar to those of the Virginia plan. The New York court pointed out that the legislature of that state had faced the problem of making liability insurance available to motorists unable to obtain coverage through normal channels because of their status as poor risks. The legislative solution to this problem, the court found, was an act authorizing the Superintendent of Insurance to adopt, after consultation with the insurers, a plan, " 'for the equitable apportionment . . . among insurers of applicants for such insurance who are in good faith entitled to but are unable to procure insurance through ordinary methods', *and to make participation in such a plan compulsory for all New York insurers.*" [Emphasis added].

The court, in the *O'Connor* case, recognized the New York plan as a legislative regulation compelling the carriers' participation therein and controlling the conditions under which insurance could be cancelled or avoided.

A different situation exists in Virginia. The Virginia Automobile Assigned Risk Plan was adopted pursuant to Code, § 38.1-264, which reads as follows:

"Agreements may be made among insurers with respect to the equitable apportionment among them of insurance which may be afforded applicants who are in good faith entitled to but who are unable to procure such insurance through ordinary methods and such insurers may agree among themselves on the use of reasonable rate modifications for such insurance, such agreements and rate modifications to be subject to the approval of the Commission."

Thus, the plan with which we are here concerned was not adopted by legislative requirement, but through legislative permission. It was not formulated by a state official, but by the carriers themselves, subject to the approval of the State Corporation Commission. Here, there is no legislative compulsion for a carrier to participate in the

plan, but merely the agreement of the carriers that all would be bound, or none would be bound. The Virginia plan is administered and financially supported by the carriers. It is they who have the right to amend the provisions of the plan. In short, what is done by legal compulsion in New York is done by voluntary agreement in Virginia.

The rule of the *Butler* case is a salutary one. The right to rely on fraud as a defense should not be defeated in the absence of a clear showing that such was intended, either by legislative act or by the expressed intention or the course of conduct of the party entitled to so rely.

We find nothing in our statutes indicating a legislative intent to abrogate this rule with respect to the voluntary assigned risk policy before us.

Nor do we find anything in the Plan evidencing an intention on the part of the defendant, by subscribing thereto, to surrender its rights to declare the policy void *ab initio* for misrepresentations, in the application, of facts material to the risk assumed. Except for listing the possible grounds of cancellation and providing for notice to the producer of record and the manager of the Plan, the provisions of the Plan relating to cancellation are identical with the provisions of the policy relating to cancellation. In fact, Section 18 of the Plan provides that notice of cancellation to the insured shall be as required in the policy.

The policy before us is a standard automobile liability policy containing provisions, with respect to cancellation, similar to those contained in the policy in the *Butler* case. Notwithstanding the provisions of the Butler policy, we upheld, in that case, the right of the insurer, upon a proper showing, to declare a policy void *ab initio*. We hold, therefore, that the provisions of the Plan, relating to cancellation, are explanatory of and supplementary to, rather than in abrogation of, the defendant's rights as pronounced in the *Butler* case.

Accordingly, the trial court erred in holding, as a matter of law, that the defendant was barred by the provisions of the Plan from declaring its policy void *ab initio*. The defendant should have been permitted to present evidence in support of its contentions that the statements of Edward Ray Smith, in the application, were false and that they were material to the risk assumed.

█ The next question is whether the defendant is estopped to deny coverage because of its filing of the SR-21 form.

We need not determine what might be the effect of the filing of the form when accompanied by other circumstances. That question is not before us in this case. We are here confronted only with the problem of whether the effect of the filing, standing alone and as a matter of law, is to bar the defendant from asserting its defense of fraud.

The filing of the SR-21 form is required by the provisions of Code, § 46.1-451, a part of the Safety Responsibility Act. The section reads, in part, as follows:

"Upon receipt of notice of the accident, the insurance carrier or surety company which issued the policy or bond shall determine whether or not the policy or bond was applicable to liability if any there was, as to the named insured and any other person using the automobile, resulting from the accident. Thereupon and not later than sixty days following receipt of notice of the accident, the insurance company or surety company shall cause to be filed with the Commissioner a written notice that the policy or bond was or was not applicable to liability if any there was, as to the named insured and any other person using the automobile, resulting from the accident."

Provision is made for a penalty, by way of a fine, upon any insurance company which, without good reason, fails to file the required form.

The effect of the filing of the form must be determined in the light of what purpose the legislature intended the form to serve.

Code, § 46.1-449, also a part of the Safety Responsibility Act, requires the Division of Motor Vehicles, upon receiving notice of certain accidents, to suspend the operating license and all registration certificates and plates of an operator involved in such an accident, unless security is furnished in an amount fixed by the Division sufficient to satisfy any judgment or judgments resulting from the accident as may be recovered against such operator.

By the terms of Code, § 46.1-450, however, the provisions of Code, § 46.1-449 do not apply to:

"(a) An owner, operator or chauffeur if the owner had in effect, at the time of the accident, with respect to the motor vehicle involved, a standard provisions automobile liability policy in form approved by the State Corporation Commission and issued by an insurance carrier authorized to do business in this State or, if the motor vehicle was not registered in this State or was a motor vehicle which was

registered elsewhere than in this State at the effective date of the policy, or at its most recent renewal, an automobile liability policy acceptable to that Commission as substantially the equivalent of a standard provisions automobile liability policy;

"(b) An operator or chauffeur if not the owner of the motor vehicle, if there was in effect at the time of the accident such a policy with respect to his operation of motor vehicles not owned by him or, if such motor vehicle was a private passenger motor vehicle, with respect to his operation of a private passenger motor vehicle not owned by him; or

"(c) An owner, operator or chauffeur if his liability for damages resulting from the accident is, in the judgment of the Commissioner, covered by any other form of liability insurance policy issued by an insurance carrier authorized to do business in this State or by a bond; . . . . . . "

This section also prescribes the limits of liability of such policies.

From an examination of this Code section, it will readily be seen that if an insurance policy meets the tests of the section, it is sufficient to satisfy the requirements of Code, § 46.1-449 and to permit an operator involved in an accident to retain his operator's license and registration without furnishing security. It is equally plain that many policies do not meet the tests of Code, § 46.1-450, and consequently do not prevent the mandatory action required of the Division of Motor Vehicles by the provisions of Code § 46.1-449.

Thus, if there is a policy applicable to the liability, if any, of an operator involved in an accident, the SR-21 form serves the purpose of so advising the Division of Motor Vehicles so that such operator will not be required to furnish security or suffer the suspension of his license and registration. On the other hand, if there is a policy, but it does not afford coverage in the manner and to the extent required by Code, § 46.1-450, then the carrier, by the SR-21 form, advises the Division of Motor Vehicles that this policy is not applicable to liability, if any, and the Division is free to invoke the provisions of Code, § 46.1-449.

We are of opinion that the legislature had no other intention with respect to the purpose to be served by the SR-21 form. Had there been an intention to make absolute the liability of a carrier to its insured when loss or damage covered by the policy occurs and the SR-21 form is filed, the legislature would surely have so stated.

As has been previously noted, the legislature has clearly expressed

such an intention with respect to certified policies issued pursuant to the Safety Responsibility Act. If, following certification of a policy issued under the Act, loss or damage covered thereby occurs, the liability of the carrier to the insured is absolute. Code, § 46.1-511. But in language just as clear the legislature has said that this provision shall not apply to any policy except one so certified. Code, § 46.1-509. We cannot read into the statute requiring the filing of the SR-21 form the language of the statute fixing absolute liability under a certified policy.

We find, therefore, that the trial court erred in ruling, as a matter of law, that the filing of the SR-21 form, standing alone, estopped the defendant from denying coverage.

■ The final question is:

Was there before the trial court an issue as to whether Ronnie Gene Smith was operating the vehicle, at the time of the accident, with the permission of the named insured?

The defendant asserts, on this appeal, that there was such an issue. The plaintiff insists that there was not.

The pre-trial order, which is controlling as to this question, entered by the court following a pre-trial conference between the parties, shows that it was the plaintiff's position that Ronnie Gene Smith was covered under the policy, that the policy was in force and effect at the time of the accident and that the defendant was, therefore, liable to her.

The order states that the defendant denied that it was liable to the plaintiff and that the policy was in effect at the time of the accident.

The defendant was liable to the plaintiff only if, at the time of the accident, Ronnie Gene Smith was covered by the policy and it was in force and effect as to his operation of the vehicle. He was covered by the policy and it was in force and effect as to his operation only if, at the time of the accident, he had the permission of the named insured. The denials of the defendant, contained in the pre-trial order, were sufficient to present an issue as to whether Ronnie Gene Smith was operating with the required permission. This was an issue as to material fact, in the face of which summary judgment should not have been entered. Rules of Court, 3:20.

Accordingly, the judgment is reversed and the case remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*