## Richmond

## CLARK S. NORMAN, JR. v. INSURANCE COMPANY OF NORTH AMERICA

January 13, 1978.

Record No. 761504.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Alan M. Frieden (Adler & Kantor,* on brief), for plaintiff in error.

*William M. Harris (Taylor, Gustin, Harris, Fears and Davis,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the Court.

This appeal questions the action of the lower court in sustaining the demurrer of Insurance Company of North America (INA) to an amended motion for judgment filed by Clark S. Norman, Jr. We consider whether under the allegations of the motion there was coverage under a general liability policy issued to Norman by INA, and whether INA is estopped from denying coverage.

Norman alleged that he was the owner of property in Norfolk on which two buildings were located — one occupied by him as his residence, and the other consisting of rental apartments. In February, 1973, Norman was the insured under a valid general liability policy issued by INA, which contract of insurance reads in part as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. Bodily Injury or

"B. Property Damage

"to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limits of the company's liability has been exhausted by payment of judgment or settlements."

An "occurrence" is defined in the policy as meaning:

"An accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

Norman alleged that on February 17, 1973, he attempted to remove the property of a tenant, Wanda Gail Wilson, from one of his apartments, he having previously notified her to vacate the premises. He claimed that while in the process of removing Wilson's property, she, her brother Ronald Wilson, and two of their friends arrived and questioned his action. An argument ensued during which Norman alleged that, believing Ronald Wilson was about to attack him, he fired his pistol at the floor without removing it from his pocket and without aiming it at anyone; and that "[t]he bullet, however, ricocheted from the floor and hit Ronald Wilson". Thereafter, Wilson sued Norman, alleging that Norman "did willfully and maliciously commit an assault and battery upon [Wilson] . . . with no provocation recognized by law" and that Norman "shot [Wilson] with a pistol" having prior thereto threatened him with "a monkey or pipe wrench". Wilson further alleged that Norman, after wounding him, continued to fire his pistol at him as he and his friends ran from the premises.

Upon a trial of the case brought against appellant by Wilson, the court gave an instruction on assault and battery which reads as follows:

"The Court instructs the Jury that every person has a legal right to freedom from unlawful assault and battery by any other person. The act of the defendant, Clark S. Norman, Jr., in inflicting a gunshot wound upon the plaintiff, Ronald E. Wilson, Jr., constitutes an invasion of the defendant Norman of the legal right of the plaintiff Wilson and an assault and battery upon him. Therefore, the burden is on the defendant, Clark S. Norman, Jr., to prove legal justification or excuse for inflicting the gunshot wound upon Ronald E. Wilson, Jr., and unless you believe from a preponderance of the evidence and the other instructions of the Court that such legal justification or excuse existed, then you shall find your verdict for the plaintiff, Ronald E. Wilson, Jr."

The jury returned a verdict in favor of Wilson in the amount of $50,000, of which $5,000 was specified to be punitive damages. This verdict was approved by the trial judge and Norman's petition for a writ of error was denied.

The action brought by Wilson alleging the intentional assault and wounding of him by Norman was defended by INA under a

reservation of the right to deny coverage. Appellant received a letter from the resident representative of INA, dated February 14, 1974, which reads:

> "This letter is to confirm our telephone conversation of February 14, 1974 in reference to the above captioned claim. We are handling the claim under a full reservation of rights because the allegations claimed in this suit do not appear to fall within the coverage of your policy. It is our suggestion that until we have reached a decision in this claim that you should employ additional counsel to represent you in this matter.

> "As soon as we have completed our investigation you will be notified as to whether we feel the coverage is applicable."

The allegations of the amended motion for judgment can be summarized. Norman alleges: (1) That his wounding of Wilson was unexpected and accidental and that "the jury never considered whether the plaintiff intended or expected to injure Wilson within the meaning of the insurance policy"; (2) That, other than its February 14, 1974 letter, the only communication that he received from INA was a letter from the attorneys retained by the company to represent him, advising the date on which depositions were scheduled to be taken and the date on which the case was set for trial; that he was not notified of the result of any investigation made by INA; that he was not properly advised of the meaning of a reservation of rights defense or fairly informed of his company's position under such a reservation; (3) That, unexplained to him by appellee, there was "an inherent conflict of interest" for INA to have defended him from a charge of assault and battery while at the same time relying on the fact that such an assault and battery had been committed and would be a complete defense to its liability to Norman under the policy; (4) That prior to the trial an offer was made on behalf of Wilson to settle the case for $16,500, which offer was not communicated to Norman by his attorneys until after the jury had returned a verdict; and (5) That INA refused to post a suspending or supersedeas bond incident to Norman's appeal to the Supreme Court of Virginia from the judgment obtained by Wilson.

In substance, Norman alleges that his policy did afford him coverage and that INA has breached its contract with him by

failing to have defended him adequately in the suit brought by Wilson and in failing to pay the judgment which Wilson recovered. Further, Norman claims that the company's violation of other alleged duties owed to him constituted a waiver of its reservation of right to deny coverage and that INA is estopped by its conduct from relying on such reservation.

The position of INA is that the action brought against appellant by Wilson was not grounded upon negligence but upon a deliberate, intentional and malicious wounding and that the jury so found. It says that its policy does not protect against all bodily injury claims no matter how incurred; that it agrees to pay on an insured's behalf only the sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage *caused by an occurrence;* and that an occurrence means an accident. Appellee contends that no definition of accident includes a willful and malicious assault and battery or an intentional and malicious shooting of one person by another.

■ Norman finds comfort in the language "from the standpoint of the insured" found in the policy's definition of "occurrence". It is clear that regardless of the standpoint of the viewer, the occurrence referred to in the policy means "an accident". The intentional assault and battery of Wilson by Norman cannot be converted into an accident by a mere statement from the person making the assault that he did not intend the act or its consequences. An insured will not be permitted to say that an intentional and malicious firing of a pistol at another, resulting in an injury, was neither expected nor intended. That was what the case of *Wilson* v. *Norman* was all about. A malicious and intentional assault was alleged, not a wantonly negligent act resulting in an assault and battery. Its verdict shows that the jury found that an expected and intended injury was inflicted on Wilson by Norman. The verdict of the jury was approved by the trial judge and was affirmed on appeal. The subject matter in controversy in *Wilson* v. *Norman* has been authoritatively settled and is *res judicata.*

Norman cites and relies upon *State Farm Mutual Auto Insurance Company* v. *Worthington,* 405 F.2d 683 (8th Cir. 1968); *Lumbermens Mutual Insurance Company* v. *Blackburn,* 477 P.2d 62 (Okla. 1970); *Brooks* v. *Continental Casualty Company,* 13 La. App. 502, 128 So. 183 (1930).

In these cases the actions brought by the insureds did not involve an intentional assault and battery. *Worthington* is typical. There an insured fired a shotgun in the direction of several boys whom he thought were stealing his watermelons. One of the boys was killed and his parents recovered a judgment against the insured. The court found that while the discharge of the gun by the insured was intentional the fatal wounding of the boy was accidental, and ruled that the result was therefore unintentional and held the company liable. In the instant case the firing of the gun by Norman, and the wounding of Wilson as the result thereof, were allegedly intentional and malicious. This was the sole issue which resulted not only in an adverse verdict but in an award of punitive damages.

In *Grenga* v. *National Surety Corporation*, 113 R.I. 45, 47-48, 49-50, 317 A.2d 433, 435-36 (1974), the plaintiffs were husband and wife and the insureds in a homeowners policy. They had an altercation with their neighbors who recovered a judgment against them in an assault and battery action. Their policy excluded coverage for any injury or damage that was "caused intentionally by or at the direction of the Insured", and the company refused to defend. Prior to insureds' action against the company, they paid the judgment and entered into a stipulation under which they were released by the parties whom they had assaulted of all their claims, and the assault and battery action was dismissed with prejudice. In its opinion the court said:

> "The plaintiffs now argue that the dismissal stipulation completely washes away the findings made in the assault and battery suit so that they can now return to the Superior Court and do battle with their insurer. Upon their return, plaintiffs will seek to show that they were the assaultees and not the assaultors, or if they struck Mrs. Rega, it was an 'unintentional' striking. Unlike General MacArthur, plaintiffs shall not return to the Superior Court.

> "In this jurisdiction we adhere to the rule that the insurer's duty to defend is determined by the allegations contained in the complaint filed against the insured. . . .

> * * *

> "There was a final judgment which in essence held that the plaintiffs had intentionally injured their neighbor. The public has a right to expect that once a litigant has had a full

opportunity to try his case to its ultimate conclusion, he will not be allowed to return to the courthouse and give it another try. Accordingly, the stipulations executed by the litigants in the assault and battery suit and counterclaim in our opinion amount to nothing more than a discontinuance of the plaintiffs' appeal. The judgments entered on the jury's verdicts act as a collateral estoppel in the case at bar. . . ."

*See,* "Liability Insurance: Assault as an 'Accident,' or Injuries Therefrom as 'Accidentally' Sustained, Within Coverage Clause," Annot., 72 A.L.R.3d 1090 (1976).

It is our conclusion that the judgment entered on the jury's verdict in the case of *Wilson* v. *Norman,* under the circumstances reflected by appellant's amended motion for judgment, constitutes a collateral estoppel of appellant's instant action against INA. Appellant's policy did not protect him against a claim for an intentional and malicious assault and battery.

The question remains whether INA, having defended Norman under a reservation of rights, is estopped by its conduct and actions from relying on such a reservation.

The duty of an insurance company to defend under the provisions of a liability policy were well explicated in *London Guar. Co.* v. *White & Bros.,* 188 Va. 195, 198, 199-200, 49 S.E.2d 254, 255-56 (1948), where we said:

> "We agree that the insurance policy cast upon the defendant the duty to defend, initially at least, only if the suit against its insured stated a case covered by the policy. So we have held and so it seems to be generally held.

> \* \* \*

> "While the duty to defend is, in the first instance, to be determined by the allegations of the notice of motion, yet if those allegations leave it in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is at its own risk; and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend. . . ."

In *Insurance Company* v. *Gentry,* 202 Va. 338, 345, 117 S.E.2d 76, 81 (1960), we held:

"When a liability insurer has knowledge of a breach by the insured of the terms of the policy and continues to defend the case without notice to the insured that it is reserving a right to deny ultimate liability, it is estopped afterwards to avoid liability on the ground of such breach. Such reservation of right must be communicated to the insured, must fairly inform him of the insurer's position, and notice thereof must be timely given. Its sufficiency is to be determined by the facts of the particular case." [Authorities omitted.]

It is Norman's contention that he was not properly advised of the meaning of a reservation of rights defense or informed of his company's position under such a reservation. We conclude that INA's letter of February 14, 1974 was in all respects sufficient to inform appellant and to give him timely notice that the company was "handling the claim under a full reservation of rights" because the occurrence alleged in the motion for judgment, including the shooting of Wilson, did not appear to fall within the coverage of the policy it had issued to Norman. Appellant was specifically told: "It is our suggestion that until we have reached a decision in this claim you should employ additional counsel to represent you in this matter." He failed to heed this advice, although he knew that he was charged with an intentional and malicious shooting, and that the company questioned its coverage and its duty to protect him from liability.

A liability insurer is not deemed to have waived, nor be estopped to set up, the defense of lack of coverage if, in its participation in defense of an action against its insured, it fairly informs him of its position and gives timely notice. It is not necessary for an insurer, operating under a waiver of rights reservation, to wait and see if it is liable under the policy. In many cases the insurer may not know until final conclusion of the litigation whether it is liable or not. In Wilson's case against Norman his motion for judgment alleged a malicious and intentional shooting and wounding. These charges were properly pleaded, and they were the charges that Norman was required to meet. However, the possibility

existed that Wilson would amend his motion and include an allegation of culpable or wanton negligence, or one of an unintentional wounding. Further, Norman was representing to his company (and still contends) that the shooting was not intentional but purely accidental. Under these circumstances the company determined to remain in the case, under a reservation of rights, notwithstanding its belief that the allegations made in Wilson's motion did not fall within its coverage.

Our conclusion that there was no coverage under the INA policy, and that its reservation of rights notice was sufficient, is dispositive of the case. Norman's other assignments of error challenge certain actions of the attorneys who conducted his defense in the Wilson case. We would observe, however, that nowhere in Norman's amended motion for judgment does he challenge the competency of his counsel, the adequacy of the defense which counsel made, or claim that counsel did not advance and urge upon the court and jury Norman's theory that the shooting of Wilson was an accident. On the contrary, appellant admits that he was defended throughout the Wilson case even to the extent that INA petitioned this Court for a writ of error.

■ Appellant alleges a possible conflict of interest on the part of counsel for INA. Such a conflict could only occur if Norman's representation to them of the Wilson incident, as an unintentional accident, was false. Norman points to nothing that the attorneys did, or did not do, that denied him a full, fair and competent defense to Wilson's action. He alleges a conflict of interest but alleges no prejudice suffered thereby. INA was under no duty to post a suspending or supersedeas bond if there was no coverage under the policy. And appellant did not allege that he would have considered any offer made by Wilson to settle had such an offer been discussed with him.

No one questions the fact that the standards of the legal profession require undeviating fidelity of a lawyer to his client, and no exceptions can be tolerated. A client may presume that his attorney has no interest which will interfere with his devotion to the cause confided in him. And an insurer's attorney, employed to represent an insured, is bound by the same high standards which govern all attorneys, and owes the insured the same duty as if he were privately retained by the insured.

There is no allegation by Norman, and no intimation in the record, that in defending Norman in the *Wilson* case his attorneys safeguarded the interest of INA and neglected that of Norman. This is not an action by Norman against his attorneys and INA for negligent representation, or one against INA for negligent employment of incompetent attorneys. It is an effort by him to recover under the terms of the INA policy even though we hold there is no coverage thereunder. Norman would accomplish this upon the theory of estoppel and implied waiver.

█ The case here is one in which there is no coverage — no insurance. It is not a question of whether a company waived a breach of condition, such as the noncooperation of the insured. For Norman to recover coverage must be created where no coverage was provided. Or, stated differently, the Court must bring into being a contract of insurance where there was none.

In *Sharp* v. *Richmond Life Ins. Co.*, 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971), we held:

> "The general rule, which we approve, is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded. Annot., 1 A.L.R.3d 1139, 1159 (1965); 43 Am.Jur.2d, *Insurance*, § 1184, p. 1102 (1969); *Insurance Co. of North America* v. *Atlantic Nat. Ins. Co.*, 329 F.2d 769 (4th Cir. 1964). *But see Columbia Fire Ins. Co.* v. *Boykin*, 185 F.2d 771 (4th Cir. 1950)."

In *Insurance Company* v. *Saccio*, 204 Va. 769, 133 S.E.2d 268 (1963), and in *Virginia Mutual* v. *State Farm Mutual*, 204 Va. 783, 133 S.E.2d 277 (1963), we held that the filing by a liability insurance company of the SR-21 form required in Virginia, stating that its policy was in force and effect and covered the driver, did not estop the company from denying coverage when in fact there was no coverage.

In *Insurance Company of North America* v. *Atlantic National Insurance Co.*, 329 F.2d 769, 775 (4th Cir. 1964), INA contended that Atlantic waived or was estopped to rely upon an exclusion clause in its policy by virtue of its filing of the SR-21 form. The court distinguished between the waiver of a mere breach of contract and a question of coverage and

concluded that we would hold that Atlantic would not be estopped despite the filing of the form. It said:

"As was pointed out by the court below, it is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained. *See Campbell* v. *Aetna Casualty & Surety Co.*, 211 F.2d 732, 737 (4 Cir. 1954). As was suggested by the late Judge Soper in the *Campbell* case, 211 F.2d at page 736, there is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or to rescind based upon some breach of a condition of the policy on the one hand and the extention of the coverage provided by the policy on the other."

The court further quoted with approval from the case of *Conner* v. *Union Auto. Ins. Co.*, 122 Cal.App. 105 110, 9 P.2d 863, 865 (1932), where it was said:

"This case does not involve the waiving of conditions which are required by the terms of the policy as a prerequisite to the establishment of liability, such as prompt notice of the accident. It involves the construction of a contract of insurance which specifically limits the liability to the use of an automobile without an attached trailer * * *. By means of the doctrine of waiver a contract may not be reformed so as to create a liability for conditions which are specifically excluded by the very terms of the instrument."

We note that the only exception to the general rule stated is where an insurer unconditionally defends an action brought against its insured. Clearly there was not an unconditional defending in the instant case in view of the reservation of rights letter to Norman by the company and its suggestion that he employ private counsel to represent him.

For the reasons given, we find no error in the order of the trial court which sustained appellee's demurrer to appellant's amended motion for judgment.

*Affirmed.*

COCHRAN, J., dissent.

I cannot agree with the majority that Norman is precluded by collateral estoppel from asserting his right to coverage under his liability insurance policy.

In *Wilson* v. *Norman*, in which we denied a writ of error (1977, unreported), the motion for judgment alleged that Norman willfully and maliciously shot Wilson with a pistol. Norman admitted shooting the pistol, but contended that to forestall an attack by Wilson he fired at the floor without removing the weapon from his pocket, and the bullet ricocheted and struck Wilson. (In his brief in opposition to Norman's petition for a writ of error, Wilson stated that without removing the pistol from his pocket Norman fired the bullet which injured him.)

Norman is bound by findings without which the judgment against him could not have been rendered in *Wilson* v. *Norman*, and he cannot maintain the present action against his insurer if any such finding is fatal to his recovery. *See Clinchfield Railroad Co.* v. *United States F. & G. Co.*, 263 F.2d 932 (6th Cir. 1959); Annot., 24 A.L.R.2d 329, 330 (1952).

At trial of the action the instruction on assault and battery placed the burden on Norman to prove "legal justification or excuse" for wounding Wilson. The jury verdict awarding Wilson compensatory and punitive damages shows conclusively that Norman failed to carry the burden of proof imposed upon him by the instruction. But does it show conclusively that the issue of intent, within the meaning of the insurance policy, was decided? I think not.

If Norman fired his pistol with the intent only to frighten Wilson, he could, nevertheless, have been found liable to Wilson for injuries unintentionally inflicted. Restatement of Torts § 13(a). I do not agree with the majority that the jury verdict shows that an expected and intended injury was inflicted on Wilson. The verdict necessarily shows only that the jury believed that Norman intentionally fired the pistol and that he did not have legal justification or excuse for doing so.

*Grenga* v. *National Surety Corporation*, 113 R.I. 45, 317 A.2d 433 (1974), relied upon by the majority, is not inconsistent with this view. The court in that case agreed that the exclusionary language of the insurance policy, applying to harm "intentionally" caused, should not apply "where an insured's

intentional act results in unintentional harm." 317 A.2d at 436. The court observed also that the complaint filed by the injured plaintiff against the insured alleged intentionally inflicted injuries, which allegations, under Rhode Island law, conclusively relieved the insurer of any duty to defend the insured. Holding that the verdicts returned on the plaintiff's complaint and the insured's counterclaim clearly established intentional harm, the court concluded that this finding precluded recovery by the insured against the insurance carrier.

Norman's policy covered injuries caused by an "occurrence," which is defined as "[a]n accident . . . which results . . . in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Construing this provision against the insurer, I conclude that Norman has alleged facts sufficient to withstand the insurer's demurrer. He has alleged an intentional act resulting in unintentional harm. If he can prove this allegation, he is entitled to coverage under his insurance policy. Accordingly, I would reverse the judgment of the trial court and remand the case for trial on the merits.