854 F.2d 1317
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Antonio ROMANO, Kathryn Romano, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
Corporation, Defendant- Appellee.
 No. 88-1526.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1988.
Decided Aug. 5, 1988.
 
 N.D.W.Va.
 REVERSED AND REMANDED.
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Robert Earl Maxwell, Chief Judge. (CA-85-253-C).
 Brent E. Beveridge (Stephen R. Brooks, Furbee, Amos, Webb & Critchfield on brief) for appellants.
 Alvin Lee Emch (W. Scott Campbell, Jackson & Kelly on brief) for appellee.
 Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Antonio Romano and Katherine Romano appeal the district court's order granting summary judgment in favor of Liberty Mutual Insurance Company in their action seeking satisfaction of a judgment rendered against Liberty Mutual's insured in West Virginia state court. Because the district court erroneously applied an objective test to determine whether Liberty Mutual's insured intended or expected to cause the Romanos' damages, we reverse.
 
 
 2
 * The Romanos purchased an unimproved lot from Terra Alta Development, Inc., a closely held corporation principally owned by Maurice Libert and Charles Hart. At the time of the purchase, Terra Alta was insured through a comprehensive general liability insurance policy issued by Liberty Mutual.
 
 
 3
 The Romanos began constructing a house on the lot but soon discovered that the house was developing serious structural defects which eventually rendered it uninhabitable. The Romanos sued Terra Alta, Hart, and Libert in West Virginia state court, alleging that they misrepresented the condition of the lot's subsoil. The jury returned a verdict against Terra Alta and Libert and awarded the Romanos $89,800 in compensatory damages and $100,000 in punitive damages. In special interrogatories, the jury found that Libert's misrepresentations to the Romanos were intentional and that Terra Alta ratified his actions.
 
 
 4
 The Romanos then sued Liberty Mutual in West Virginia state court seeking satisfaction of their judgment against Terra Alta. Liberty Mutual removed the action to the district court, where both the Romanos and Liberty Mutual moved for summary judgment. The district court referred the case to a magistrate, who concluded that Liberty Mutual's insurance contract with Terra Alta did not obligate it to satisfy any claims brought against the corporation for making intentional misrepresentations. The district court, on the magistrate's recommendation, entered summary judgment in Liberty Mutual's favor.
 
 II
 Liberty Mutual's policy provided:
 
 5
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of Coverage A bodily injury or Coverage B property damage to which this policy applies, caused by an occurrence.
 
 
 6
 An "occurrence" is later defined in Section VI of the policy as:
 
 
 7
 "occurrence" means an accident, including continuous exposure to conditions, which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured. (footnote omitted) (emphasis in original).
 
 
 8
 In applying this definition to the Romanos' claim, the magistrate concluded that
 
 
 9
 "The defendant insured's intent is determined by traditional tort principles, that is, by looking to the nature of the act and the accompanying foreseeability of harm." [footnote omitted] ... [I]t is beyond dispute that the damage to the plaintiffs' house was a natural and probable consequence of Libert's misrepresentation, and that it was reasonably foreseeable, particularly to a person who was actively involved in the development of a residential subdivision which included both improved and unimproved lots.
 
 
 10
 The magistrate's interpretation of "occurrence" is erroneous. The definition explicitly states that the determination of whether an injury was expected or intended is to be made "from the standpoint of the insured." It requires an inquiry into Libert's subjective intent. Whether the Romanos' damages were reasonably foreseeable to realtors in general is irrelevant. "[T]he presumption in tort and criminal law that a person intends the natural and probable consequences of his intentional acts has no application to the interpretation of terms used in insurance contracts." Continental Western Ins. Co. v. Toal, 244 N.W.2d 121, 125 (Minn.1976) (citations omitted). Therefore, it was improper for the magistrate to apply a "reasonably foreseeable" test to determine whether Libert intended or expected to render the Romanos' house uninhabitable when he misrepresented the quality of the subsoil on their lot.
 
 
 11
 The jury's answers to the special interrogatories shed no light on this narrow but important issue. They establish only that Libert's misrepresentations were intentional; they do not indicate that Libert expected or intended the damages that occurred. It is the latter intent or expectation that Liberty Mutual must prove in order to be relieved from liability under the insurance contract. See Northwestern National Casualty Co. v. Phalen, 597 P.2d 720 (Mont.1979). Viewed from the standpoint of Libert and Terra Alta, it is plausible that, while they knew that the subsoil was of a poorer quality than they represented, they did not actually expect or intend it to fail to support the Romanos' house. If that is the case, the insurance contract covers the insured's liability for the Romanos' damages. There is a well recognized distinction between an intentional act and unintended damage. "[I]t is the harm itself that must be intended before the exclusion will apply." Continental Western, 244 N.W.2d at 124. Of course, there are instances where the intent to harm is so clear that the exclusion applies as a matter of law. This occurs, for example, when the insured intentionally and maliciously fires a gun at a person. See Norman v. Insurance Co. of North America, 218 Va. 718, 239 S.E.2d 902 (1978). But here Libert's intention must be determined by considering all of the facts surrounding his transaction with the Romanos. The trier of fact must resolve this issue, and therefore the district court should have denied Liberty Mutual's motion for summary judgment.
 
 III
 
 12
 Liberty Mutual asserts several alternate grounds for affirming the district court's order granting summary judgment in its favor. It contends that Terra Alta failed to give it adequate notice of the Romanos' original lawsuit as required by the insurance contract, that the contract did not cover property alienated by Terra Alta, that the contract did not cover Terra Alta's "completed operations," and that West Virginia public policy precluded the recovery of damages from an insurance company for intentional torts committed by its insureds.
 
 
 13
 Liberty Mutual presented these same arguments to the district court in its motion for summary judgment. The district court reached only the first of these arguments, holding that summary judgment was improper on the issue of adequate notice. The district court's ruling on this issue was clearly correct in light of the conflicting versions presented by both sides, and we refuse to disturb it.
 
 
 14
 We have the power to consider Liberty Mutual's other grounds for affirming summary judgment even though the district court did not reach them. See Maynard v. General Electric Co., 486 F.2d 538, 539-40 (4th Cir.1973). Nevertheless we decline to do so. Accordingly, we reverse the district court's order granting summary judgment in Liberty Mutual's favor on the ground that the Romanos' injury was not an "occurrence" within the meaning of the insurance contract between Liberty Mutual and Terra Alta and remand the case for further proceedings consistent with this opinion.
 
 
 15
 REVERSED AND REMANDED.
 
 WILKINSON, Circuit Judge, dissenting:
 
 16
 The parties to the insurance contract at issue here did not contract for coverage of damages arising from the insured's intentional acts. Rather, coverage was limited to unintentional acts. Risks were assigned, and premiums calculated and paid, on that basis. By locating a crevice in the policy's language and wedging it open to create a litigable issue, the majority effectively remakes the parties' bargain. I respectfully dissent.
 
 
 17
 The policy language at issue here explicitly limits coverage to "accident[s] ... which result in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." By focusing on the second portion of this clause, the majority loses sight of the first, which clearly limits coverage to accidents. A state court jury found that Libert's misrepresentations were intentional, but the majority holds that they may be accidents within the terms of the policy. This turns the language of the policy on its head, "fine tuning" it to the detriment of its clear import.
 
 
 18
 Intentional injury exclusion clauses like that at issue here protect insurers from the cost of damages arising from their insureds' intentional conduct. They also deter the commission of intentional torts by placing the financial burden of their consequences on those who would commit them. By divorcing intentional acts from intentional damages, the majority makes it possible for an insured to insure against its own fraud.
 
 
 19
 Terra Alta and its principals were judgment proof in this case, requiring their victims to sue for coverage. In the future, however, the perpetrators of intentional torts may use the principle established here to establish coverage. The analysis adopted by the magistrate in this case, in which intentionality is measured with reference to traditional tort principles of foreseeability, would preclude such a result. I would therefore affirm the judgment of the district court for the reasons expressed in the magistrate's careful opinion.