[Civ. No. 20451. First Dist., Div. One. Feb. 8, 1963.]

GARNETTE M. NICHOLS, Plaintiff and Appellant, v. PACIFIC INDEMNITY COMPANY, Defendant and Respondent.

Nichols, Williams, Morgan & Digardi and Edward M. Digardi for Plaintiff and Appellant.

Ricksen, Snook & Vendt, Carl R. Vendt and Richard G. Logan for Defendant and Respondent.

BRAY, P. J.—Plaintiff appeals from judgment, after jury verdict in favor of defendant.

## QUESTIONS PRESENTED

1. Does failure by an insurance company to comply with section 16060, Vehicle Code, and section 229 subdivision (b), Title 13, California Administrative Code, by notifying the Department of Motor Vehicles of noncoverage, estop the company from claiming noncoverage, or does it constitute an admission of coverage when none exists?

2. Should this action be remanded to the trial court to permit plaintiff to prove damages not alleged in her complaint?

## RECORD

August 20, 1958, plaintiff was involved in an accident in which her car collided with one driven by one Patrick Merrigan. Plaintiff obtained a default judgment against him for personal injuries received in the accident. Claiming Merrigan to be an insured under a comprehensive liability policy issued by defendant to Eggers, the employer of Merrigan at the time of the accident, plaintiff instituted this action against defendant. The theory of the complaint is that Merrigan, when the accident occurred, was operating the vehicle in question within the course and scope of his employment and was insured by his employer's policy. Defendant denied liability.

At the trial the two issues submitted to the jury were: (1) Was Merrigan's car being used by him under contract in behalf of the employer, Eggers? (2) Was Merrigan receiving an operating allowance of any sort from Eggers for the use of the Merrigan automobile? The jury found adversely to plaintiff's contentions on both issues. While plaintiff has appealed from the judgment as a whole, in her briefs and on argument before this court she has limited her

grounds of appeal to the refusal of the court to submit to the jury issues as to whether or not the defendant's conduct constituted an admission that it had issued to Eggers a policy insuring Merrigan as an employee of Eggers, and if so, whether at the time of the accident Merrigan was acting within the scope of his employment by Eggers.

The factual basis for her contentions follows: Shortly after the accident Merrigan filled out a report of the accident (form SR-1) directed to the Department of Motor Vehicles. That report was received by the department September 15, 1958. In that report Merrigan stated that he was insured by defendant. At the bottom of the report there is an insurance information stub. When the department receives an accident report in which the person reporting claims to have insurance, the stub is detached and mailed to the named insurance company. Regulations of the department (Cal. Admin. Code, tit. 13, § 229) provide, pursuant to statute, that whenever an insurance company receives notice from the department that the person filing an accident report claims to have insurance with that company, the company is required to notify the department within 20 days if such insurance is not in effect.

September 25, 1958, the department detached the information stub from Merrigan's report and sent it to defendant. On November 14, 1958, plaintiff's attorneys wrote the department inquiring concerning "the financial responsibility" of Merrigan. The department wrote "Pacific Indemnity" on the face of the letter, stamped on its back "Financial Responsibility" and returned the letter to the attorneys. Apparently the department intended its action to indicate that Merrigan was insured by defendant or that he claimed to be. On May 27, 1959, defendant wrote to the department disclaiming coverage. On July 24, 1959, Merrigan wrote defendant requesting for the Department of Motor Vehicles the number and coverage of the policy in effect at the time of the accident, stating that he then was employed by Eggers. On August 26, 1959, defendant replied to the effect that as its files indicated that Merrigan was not acting in the scope of his employment by Eggers, Merrigan was not entitled to the protection of the Eggers policy, nor to any information concerning it.

The exact date upon which plaintiff filed suit against Merrigan does not appear. As plaintiff's judgment against Merrigan was obtained July 31, 1959, that action was prob-

ably filed subsequent to the department's reply to plaintiff's attorneys.

In order to fully understand the situation as presented to the trial court, it is necessary to review the proceedings in the case. Plaintiff's pretrial statement was to the effect that the issues involved were (1) the agency relationship between Merrigan and Eggers at the time of the accident, and (2) the coverage offered by "an insurance policy issued" to Eggers. Defendant's pretrial statement said, "The issue is contractual liability." The court in its pretrial conference order adopted plaintiff's statement of the issues.

The complaint alleged that at the time of the accident there was in force a policy of insurance issued to Eggers, indemnifying him and any employee acting within the scope of his employment. Thus, at the trial, the primary question necessarily was what type of insurance coverage Eggers had obtained from defendant. Plaintiff introduced in evidence a policy of insurance issued to Eggers by defendant dated April 15, 1958. This policy in effect limited coverage to automobiles owned or hired by Eggers. At argument it was conceded that it did not by its terms cover an employee of Eggers while driving an automobile that was neither owned nor hired by Eggers, even though the employee were acting within the scope of his employment.[1] At the time of the accident Merrigan was driving his own automobile, and he and his employer, Eggers, were on their way to play golf.

As the trial proceeded plaintiff took the position that the evidence would support a finding by the jury that: (1) Merrigan's car was being used by him under contract in behalf of his employer, Eggers, and that Merrigan received from Eggers an operating allowance for the use of the Merrigan automobile. (These were the issues submitted to the jury and from the adverse determination of which plaintiff does

---

[1]Subsequent to argument, plaintiff by an involved reasoning has contended in effect that the policy of insurance as issued, purporting to cover only automobiles owned or hired by Eggers, had such limitations in it that "no one can possibly receive a benefit for premium paid for non-owned automobiles" and therefore in some way the policy covers an employee acting in the scope of his employment, even though not using an automobile owned or hired by his employer. Such contention is without merit. Moreover, this contention was not made in the trial court. As will hereinafter appear, plaintiff's requested instruction asked the jury to determine whether Merrigan was acting in the course of his employment *only if* the jury found that defendant had issued a policy covering Merrigan while acting in the course of his employment. As juries do not interpret contracts, this instruction was based upon plaintiff's claim of estoppel and admission.

not appeal.) (2) That because of defendant's failure to notify the department within 20 days of receipt of the aforementioned notice, and the defendant's letter giving as the reason for refusing Merrigan information concerning the Eggers policy that Merrigan had not been acting in the scope of his employment, defendant admitted and was estopped to deny coverage, if Merrigan was so acting.

At the end of the reception of evidence, the court advised counsel in the absence of the jury that he proposed to submit to the jury only the contractual issues hereinbefore stated. Plaintiff then requested that "the general question of coverage under the policy should be submitted to the jury, based upon evidence of the admissions made by respondent to the Financial Responsibility Section of the Department of Motor Vehicles . . ."

Plaintiff offered an instruction asking the jury to find whether defendant had issued a policy covering Merrigan while operating his automobile in the scope of his employment, and if so, was Merrigan so acting. The court refused to give this instruction or to submit to the jury the effect of defendant's action in not replying to the Motor Vehicle Department within the 20-day period.

1. *Defendant Did Not Admit, Nor Is It Estopped to Deny, Coverage.*

Section 16060 provides: "Upon receipt of notice of an accident from the department, the insurance company . . . named in the notice shall notify the department within such time and in such manner as the department may require whenever the policy or bond was not in effect at the time of the accident." Section 229 of the Administrative Code, hereinbefore mentioned, requires an insurance company which receives the notice specified in section 16060, Vehicle Code, to notify the department within 20 days thereafter, if it does not have in effect a policy covering the person named. No penalty is prescribed for failing to comply with either section.

Although at the time of the trial, the effect of a failure to comply with section 16060 had not been determined by the courts, the trial judge properly determined that such failure did not have the effect of creating a nonexistent policy of insurance, and properly refused to instruct the jury that defendant could be held liable as if such policy existed.

Subsequent to the trial, *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381 [19 Cal.Rptr. 662, 369 P.2d 262], determined the effect of a failure to comply with section 16060. In that case the plaintiff recovered a judgment against one Symon for personal injuries received in an automobile accident due to Symon's negligence. Symon reported the accident to the department, stating that the defendant had issued to him a policy extending public liability coverage. (Actually, the defendant's policy only covered fire, theft, and collision.) The department sent the defendant a written notice to the effect that Symon claimed to be insured by the defendant and requesting the defendant to report to the department within 20 days whether or not such policy was in effect at the time of the accident. The defendant failed to make such report. The plaintiff sued the defendant insurance company, alleging the above facts, and that relying on the defendant's failure to state to the department whether or not there was such a policy in effect, and believing that there was one, the plaintiff filed a complaint for damages against Symon and obtained a judgment against him. The complaint alleged further that the defendant by its failure to reply to the Motor Vehicle Department was estopped to deny such a contract of liability insurance, and to deny its legal obligation to the plaintiff. On motion for summary judgment, defendant admitted its failure to comply with section 422.6, Vehicle Code (now § 16060). The plaintiff was granted a summary judgment against the defendant for $6,575, the minimum liability coverage to qualify Symon for exemption from security deposit. (Veh. Code, former § 422.7, subd. (a), now § 16059, subd. (a), with $10,000 minimum.)

The Supreme Court reversed the judgment of the trial court and held, in effect, that the violation of section 422.6, Vehicle Code (now § 16060) did not cause an estoppel to arise against the insurance company to prove that it had not insured Symon, and hence the measure of damages allowed by the trial court was erroneous. The court said (pp. 385-386, 387): "It is our view that the relevant statutes impose a standard of conduct upon those engaged in the business of writing public liability insurance and that plaintiff was one of those for whose benefit the legislation was enacted; that a violation of that duty exposed defendant to liability for such damages as might proximately flow from that violation; but that where no policy coverage had been

extended the damages flowing from such violation could not be measured by reference to such a policy. . . . It is, however, appropriate to note further in this connection that the automobile accident in which plaintiff in the case now at bench was injured occurred *before* defendant's alleged violation of the involved statutes and thus the injuries and damages proximately flowing from the *accident* were not caused by negligence of a driver whose operator's license, but for defendant's violation, would have previously been suspended. Damages which do suggest themselves as conceivably being causally related to defendant's omission might include such items as attorney's fees, expenses of action which might not otherwise have been incurred, etc. Such items, of course, would require proof and cannot in the absence thereof furnish the basis for a judgment, summary or otherwise.''

Plaintiff practically concedes that *Simmons, supra,* has laid at rest any question that failure to comply with section 16060 estops the insurance company from denying coverage. But, she says, as *Simmons* dealt with a summary judgment, the effect of such failure as evidence of an admission of coverage was not considered. While that matter was not discussed in the opinion, the court, in fact, passed upon it. ''Plaintiff asserted, and defendant denied, that defendant had made either express or *implied* representations to plaintiff as to insurance coverage . . . Plaintiff alleged and defendant denied that plaintiff had been in any wise damaged by representations express *or implied* even if they had been made as charged.'' (P. 384; emphasis added.) The trial court did not base its judgment on estoppel but on the ground that ''defendant, being under a legal duty to do so, failed to reply when called upon by the department to state whether or not coverage existed.'' (Pp. 384-385.) The reviewing court held not only ''that the summary judgment could not be supported upon the theory of estoppel'' (p. 384), but also in effect that violation of section 16060 could not constitute even an implied representation (as claimed by the plaintiff) of a policy extending coverage for alleged damages occurring prior to such violation, that ''where no policy coverage had been extended the damages flowing from such violation could not be measured by reference to such a policy.'' (P. 386.) Under the circumstances in *Simmons* and in the instant case, recovery on the ground of an implied admission would be predicated on

the existence of an insurance policy which did not exist. Moreover, how could the mere failure to comply with section 16060 bring into existence a nonexistent insurance policy? What would be its terms? What would be the amount of its coverage?

Under the reasoning in *Simmons,* it must be remembered that the violation of the section in nowise caused the accident nor any of plaintiff's damages resulting from her injuries therein.

Nor did the statement in defendant's letter constitute an admission of the existence of a nonexistent policy of insurance merely because the only reason given for denying Merrigan access to the policy was that defendant had information to the effect that Merrigan was not acting in the scope of his employment. Actually, the statement was replying to Merrigan's statement in his letter to defendant that at the time of the accident he "was pursuing the duties of my job." Defendant replied in effect that that was not so.

2. *Should the Action Be Remanded?*

Plaintiff at no time claimed that she relied upon defendant's actions or that they caused her any damage of the type that *Simmons, supra,* indicates might result from such actions. Her sole claim was that she was entitled to payment of the damages resulting from Merrigan's acts long prior to any failure by defendant to comply with section 16060.

Although plaintiff knew before bringing this suit that defendant had notified the department that defendant claimed noncoverage, plaintiff tried the case both upon the theory that Merrigan's employer's insurance as issued actually covered Merrigan, and upon the theory of an implied admission that another policy or clause existed. While it is true that at the time of the trial there was no decisional authority on the effect of a violation of section 16060, nevertheless the act was in existence, and to get an interpretation of it plaintiff should have pleaded its violation. Moreover, the case was submitted to the jury on the theory, completely divorced from the failure of defendant to comply with section 16060, that the facts were such that the policy in evidence, by its terms, covered Merrigan.

In spite of the absence of a pleading, evidence upon which plaintiff based her theory of estoppel and implied admission was admitted without objection. The court prop-

erly held, in effect, that the evidence did not show a right to recover the damages which plaintiff claimed she was entitled to recover. Now plaintiff asks that the case be remanded to give her a right to plead and prove damages on a different theory of damages than that contemplated either by the pleadings or the proof at the trial.

The situation here is quite different from that in *Lattin* v. *Coachella Valley County Water Dist.* (1962) 57 Cal.2d 499 [20 Cal.Rptr. 628, 370 P.2d 332], where in the trial court the plaintiffs had been denied recovery on the ground of the defendant's governmental immunity. On appeal the judgment was reversed because of *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], decided while the appeal in *Lattin* was pending, holding that the doctrine of governmental immunity no longer existed. In *Lattin* the pleading and the theory and proof of damages would be identical on a retrial with those originally presented to the trial court, whereas in the instant case all three would have to be changed. In *Lattin*, the situation, contrary to that in the instant case, was such that on remand, were the case submitted on the record of the prior trial, no further proceedings would be necessary.

Nor is *People* v. *Kitchens* (1956) 46 Cal.2d 260 [294 P.2d 17], in point. There in a case tried before the decision in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], the defendant was convicted on evidence which under the ruling in *Cahan* was illegally seized. The Supreme Court held that the defendant was entitled to the benefit of *Cahan*, even though at the trial, and before the *Cahan* decision, the defendant had failed to object to the admission of the evidence. Obviously, the situation in each of the last named cases was in nowise comparable with the situation here.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.