448 P.2d 873

**NATIONAL UNION INSURANCE COMPANY, Appellant,**

v.

**Carolyn CHATTERTON, by her Guardian ad Litem, Bernard I. Rabinovitz, Appellee.**

**No. 2 CA–CIV 577.**

Court of Appeals of Arizona.

Dec. 19, 1968.

Review Denied March 18, 1969.

Murphy & Vinson, by James M. Murphy, Tucson, for appellant.

Miller, Pitt & Feldman, by Stanley G. Feldman, Tucson, for appellee.

MOLLOY, Judge.

This appeal involves provisions of the Safety Responsibility Act, A.R.S. § 28–1101 et seq. The controlling question is whether the appellant insurance carrier became liable for the negligence of a nonpermissive user of an automobile by reason of its failure to file with the Financial Responsibility Branch of the Arizona Highway Department a notice that its policy on this vehicle did not afford coverage for the nonpermissive user.

An understanding of the facts of the case will be aided by a review of our statutory requirements regarding the reporting of automobile accidents and the administrative practice thereunder.

The driver of an automobile involved in an accident resulting in bodily injury is required by the terms of A.R.S. § 28–667, subsec. A to forward a written report of the accident to the Highway Department within five days of the accident. If the driver is "physically incapable" of making the written accident report, then it becomes the duty of a non-driver owner to make the report. A.R.S. § 28–668, subsec. B. Driving privileges may be suspended for failing to report. A.R.S. §§ 28–670, 28–1141.

The report is required to be made on a form approved by the Highway Department and to

"contain information sufficient to enable the department to determine whether the requirements for the deposit of security under any of the laws of this state are inapplicable by reason of the existence

of insurance or other exceptions specified therein."

9 A.R.S. § 28–669, subsec. C.

In Arizona, this accident report form is administratively known as an "SR 1." The same form is to be completed whether it is the driver or a non-driver owner who makes the report. Just above the signature line at the end of the report, the question is asked, "DID YOU HAVE LIABILITY INSURANCE IN EFFECT ON THE DATE OF THE ACCIDENT?" If the answer is affirmative, the reporting person is directed to "GIVE FULL INFORMATION ON INSURANCE FORM BELOW." The "insurance form below" is known as an "SR 1A" form. It is readily detachable from the SR 1 form by reason of perforation in the paper.

At the top of the detachable SR 1A form, there appears the statement, "IF YOU FAIL TO GIVE FULL INFORMATION BELOW, IT WILL BE ASSUMED THAT YOU DID NOT HAVE AUTOMOBILE LIABILITY INSURANCE." Blanks follow, with appropriate captions, on the SR 1A form calling for the identity of the insurance carrier and the insurance policy, and the time and circumstances of the accident. At no place on either the SR 1 form or the SR 1A form is there any space allocated to indicate whether the driver of an accident car was an authorized driver, or whether the driver, as opposed to a reporting owner, had liability insurance in effect on the date of the accident.

When an accident report is received by the Highway Department and the SR 1A form is filled in, the office of the Superintendent of Financial Responsibility detaches the SR 1A from the SR 1, and mails the SR 1A form to the appropriate office of the insurance company named thereon. This is not done pursuant to any specific mandate of the Safety Responsibility Act, see Stephenson v. Millers Mutual Fire Insurance Company, 236 F.Supp. 420, 423 (D.C.D.Ariz. 1964).

The most critical provision in the Act, for the purposes of this appeal, is Subsection 28–1142, subsec. D:

"Upon receipt of notice of the accident, the insurance company or surety company which issued the policy or bond shall furnish for filing with the superintendent a written notice that *the policy or bond* was not in effect at the time of the accident, if such was the case. *If no such notice is received, the policy or bond shall be deemed to be in effect for the purposes of this chapter.*" (Emphasis added)

9 A.R.S. § 28–1142, subsec. D, as amended.

The statute gives few clues as to how or by whom "notice of the accident" is to be given or what policy or bond is referred to by "*the* policy or bond." This statute is an amendment to the Act adopted in 1954, Ch. 115, Laws of 1954, and see Hastings v. Thurston, 100 Ariz. 302, 308–309, 413 P.2d 767, 772 (1966). The amendment established for Arizona a system of "negative" dialogue between the insurance company receiving an SR 1A and the Superintendent of Financial Responsibility.

Most states which have adopted the Uniform Motor Vehicle Safety Responsibility Act or substantially similar legislation, and Arizona, prior to the 1961 amendment, require an insurance company which has been given notice of an accident to file a special form, usually called an "SR–21," affirming the effectiveness of the insurance referred to in the notice. This is known as the "positive" system. See Hastings v. Thurston, supra, 100 Ariz. 308–309, 413 P.2d 767. Under the "negative" Arizona system provided for by amended § 28–1142, subsec. D, the insurance carrier is required to act only in the event that it wishes to deny that the policy was in effect, by executing the back of the SR 1A form and returning it or some equivalent writing to the Superintendent of Financial Responsibility.

With this legal and administrative background in mind, we come to the facts of the present case.

William Chatterton was killed in a one-car accident in the early morning hours of February 12, 1965, while riding as a passenger in a car driven by Chauncey Lewis. The car driven by Lewis was owned by Marvin Marks and was used exclusively by his son, James Marks. It was found by the trial court, and is now beyond dispute, that the car was taken and driven by Chauncey Lewis on the fatal trip without the permission of either Marvin Marks or James Marks. The automobile was insured under a policy issued to Marvin Marks by the appellant insurance company. The policy did not provide coverage for injuries caused by the negligence of an unauthorized driver such as Chauncey Lewis was at the time of the accident.

On or about March 25, 1965 (some six weeks after the accident), James Marks filled out an SR 1 and the attached SR 1A forms and forwarded them to the Highway Department. There was no showing in the trial court that James Marks was under a duty to do this. While he did, erroneously, list himself as owner of the accident vehicle, there was no showing that Chauncey Lewis was so disabled as to be incapable of filing the required report, and, in any event, the sanctions of the Safety Responsibility Act, A.R.S. § 28–1142, subsec. A, were inapplicable to Marks in view of the fact that Chauncey Lewis was an unauthorized driver. A.R.S. § 28–1143, subsec. A (3). On this form, James Marks affirmatively answered the question on the SR 1 inquiring as to whether he had a liability insurance policy "in effect" at the time of the accident. He named Chauncey Lewis as the driver, but did not indicate on either form whether Lewis had permission to drive the car, nor, as previously stated, is there any portion of either form asking for such information. He named the appellant insurance company on both forms and filled in the pertinent information on the SR 1A form.

These forms were received by the Highway Department, and, according to the records of the Superintendent, the SR 1A form was detached and forwarded to the address of the appellant's regional claims office in San Francisco which was currently on file with the Superintendent. Appellant's regional claims manager testified that the form was not received by his office in San Francisco. While appellant's district office had changed addresses in June of 1964, it had continued to receive SR 1A forms from Arizona with regard to other accidents and claims. The regional claims manager testified that he had received information by February 26, 1965, that Chauncey Lewis was or at least may have been an unauthorized driver of the Marks car, and that, upon receipt of the SR 1A form, he intended to return it (via appellant's Phoenix office) to the Superintendent with a notation denying coverage as to the driver Lewis. In any event, for whatever reason and circumstances, the SR 1A form filled out by Marks was never returned to the Superintendent.

On or before April 5, 1965 (some eight weeks after the accident), Chauncey Lewis filled out and forwarded to the Highway Department an SR 1 form. Under the question as to whether he had an insurance policy "in effect" at the time of the accident, he wrote "unknown." He did not name appellant anywhere on the SR 1 form or make any reference to any insurance policy or any insurance coverage anywhere on the SR 1. The records of the Highway Department indicate that he either did not fill in the SR 1A form at all or that it was detached from the SR 1 prior to the Department's receipt. The Superintendent invoked no sanctions against Chauncey Lewis under § 28–1142, subsec. A, because he assumed, according to his testimony, that since appellant had not filed denial of coverage with respect to the SR 1A filled in by Marks and sent to appellant, the liability insurance provided for on that form was "in force" at the time of the accident.

· Chatterton's widow subsequently brought suit against Marvin Marks, James Marks, and Chauncey Lewis. The two Marks were represented by counsel retained by appellant. Chauncey Lewis was represented by other counsel of his own selection who was not paid by appellant. Summary judgments were entered in favor of Marvin Marks and James Marks, from which no appeal was taken. Plaintiff was awarded a judgment in the amount of $36,512.-60 against Chauncey Lewis, after which she instituted garnishment proceedings against appellant, who denied any liability. The trial judge held, resolving the matter of the "lost" SR 1A against the insurer, that the terms of § 28–1142, subsec. D established a conclusive presumption of effective insurance coverage for the driver Lewis in the absence of the filing of a denial by the insurer, and that the insurer had either waived its right to or was estopped to deny coverage for the driver, Chauncey Lewis. It accordingly entered judgment against appellant in the amount of plaintiff's judgment against Chauncey Lewis.

We approach decision in any case involving the Safety Responsibility Act with the utmost caution. We are mindful that our Supreme Court has expressed judicial scorn for "artful distinctions" urged in behalf of insurance carriers with regard to questions of coverage arising under the statute. Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967); Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963). This court very recently had occasion to state that the foregoing authorities and Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129 (1966), make it clear that our Supreme Court " * * * regards the claims of automobile accident victims to funds created by insurance as interests of the highest protectible order." Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556 (1968).

The clear weight of authority from other jurisdictions construing legislation using both "positive" and "negative" systems, holds that an insurer does not become liable for coverage by an erroneous response to the insurance inquiry directed to it under the statute. Looney v. Allstate Insurance Company, 392 F.2d 401 (8th Cir. 1968) (interpreting Arkansas law); Insurance Co. of North America v. Atlantic National Ins. Co., 329 F.2d 769 (4th Cir. 1964) (interpreting Virginia law); Nichols v. Pacific Indemnity Company, 212 Cal.App. 2d 806, 28 Cal.Rptr. 268 (1963); Simmons v. Civil Service Employees Insurance Co., 57 Cal.2d 381, 19 Cal.Rptr. 662, 369 P.2d 262 (1962); Marley v. Lewis, 189 Kan. 658, 369 P.2d 783 (1962); Seaford v. Nationwide Mutual Insurance Company, 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496 (1961); Schaffer v. Mill Owners Mutual Insurance Co., 242 Or. 150, 407 P.2d 614 (1965), and other cases cited in the foregoing. Contrary holdings of a line of Wisconsin cases have been abrogated by statutory amendment. See Hain v. Biron, 26 Wis.2d 377, 132 N.W.2d 593 (1965), which sets forth and summarizes the previous decisions and the amending legislation.

This state of the law clearly supports our view that the factual circumstances here, consisting of no affirmative conduct on the part of the insurer and no acts of reliance by the plaintiff, do not support liability on an estoppel basis. Unless A.R.S. § 28–1142, subsec. D imposes liability on the insurer, there is none.

We are not required to pass upon the broad question of whether, under any circumstances, an insurance company might become liable by reason of its failure to file a § 28–1142, subsec. D denial. We hold only that the failure of this insurance company to respond to the notice that it may have received was not sufficient to impose liability upon it.

The enigmatic statutory language pertaining to "notice" as contained within A.R.S. § 28–1142, subsec. D has been clarified in Sampson v. Transport Indemnity

Company, 1 Ariz.App. 529, 405 P.2d 467 (1965):

"It is our opinion from a reading of the entire statute that the 'notice' A.R.S. § 28–1142, subsec. D speaks of in the first sentence is notice from the Financial Responsibility Division *that a person involved in the accident claimed or asserted coverage under a policy* issued by the insurance company." (Emphasis added)

1 Ariz.App. 532, 405 P.2d 470.

The only assertion of coverage with which we are concerned was made by James Marks. We pass over the question of whether the notice he filed could in any event impose statutory liability upon an insurance company, in that the law did not require this notice to be filed by him. We base our conclusion of nonliability upon the failure to find in this notice any claim or assertion of coverage for the nonpermissive driver. The driver of this vehicle claimed no liability insurance coverage for this accident, and hence there is no basis for imposing liability upon the insurance company because of the report filed by this driver, the judgment debtor here.

The form filed by James Marks asked: "Did *you* have liability insurance in effect on the date of the accident?" (Emphasis added.) To this question, James Marks truthfully answered in the affirmative. That the insurance claimed by James Marks was in effect is beyond question. The appellant insurance company honored its commitments to its insureds under its policy and provided to James Marks, and his father, a defense in this action.

It would be an extremely harsh law, in view of this limited claim, that would impose liability upon the insurance company for failing to respond to a form notice which indicated that a response was needed only if the policy or bond reported to it " * * * WAS NOT in effect," and when the response form to be used stated. that, if no response were made, " * * * it will be assumed that the liability insurance *claimed* was in effect." [1] (Emphasis added.)

The issue of whether § 28–1142, subsec. D is applicable being dispositive, we see no need to consider the other assertions of error.

Judgment reversed, with directions to enter judgment in appellant's favor.

HATHAWAY, C. J., and KRUCKER, J., concur.

[1] The full text of form SR 1A reads:

"Mail To: ARIZONA HIGHWAY DEPARTMENT, MOTOR VEHICLE DIVISION,
FINANCIAL RESPONSIBILITY BRANCH
1739 WEST JACKSON STREET, PHOENIX, ARIZONA 85007

"The undersigned company advises that with respect to the accident and the automobile liability policy or bond reported on the face of this form, such policy or bond WAS NOT in effect.

"Name of Insurance Company _____

"NOTE: Unless this form is returned within 15 days, it will be assumed that the liability insurance claimed was in effect.     By _____
Title _____
Date _____"