497 P.2d 72

Claude Wayne NICHOLAS et al., Appellants,

v.

.CAROLINA CASUALTY COMPANY, a corporation, Appellee.

No. I CA–CIV 1387.

Court of Appeals of Arizona, Division 1, Department B.

May 16, 1972.

Rehearing Denied June 7, 1972.

Review Denied July 13, 1972.

Paul G. Rees, Jr., Tucson, and Richards. & Heilman by Jeff Richards, Yuma, for appellants.

Robert W. Nebeker, Yuma, for appellee..

JACOBSON, Judge.

We are primarily presented in this appeal with the question of the effect of the failure of an insurance company to deny insurance coverage to the Financial Responsibility Section of the Arizona Highway Department pursuant to A.R.S. § 28–1142, subsec. D.

This appeal arose out of a declaratory judgment action brought by appellee, Carolina Casualty Co., seeking a determination of its duty to defend and its liability on an insurance policy in an action brought by appellants, Claude Wayne Nicholas and James D. Elliott against appellant, James L. Campbell, administrator of the estate of Howard Rushing, deceased.

The factual basis giving rise to this action is as follows:

On January 23, 1967, the deceased, Howard Rushing, was employed as a maintenance man by Clare Pattee Trucking, Inc. (company). The company is engaged in the transportation of seasonal crops from the El Centro, California, area to markets in Los Angeles and San Francisco, California. The transporting of these crops is done in large, refrigerated trucks. During the harvesting season, these trucks are in almost continual operation driving to and from the harvesting areas and the markets. In order to keep its trucks rolling, during this period, the trucking company utilized a 1960 Ford pickup designed and equipped with rather sophisticated service equipment to maintain and repair the trucks on the road. This vehicle was described as a "workshop on wheels". The deceased, Mr. Rushing, was employed to perform this maintenance function and used the Ford pickup for this purpose.

Because of the nature of the company's business, moving seasonally with the crops, the company maintained an office in the El Dorado Hotel in El Centro, California, which during the period in question also housed the various employees of the company.

During this period, the deceased resided at the El Dorado Hotel in El Centro, and did not have a personal vehicle at his disposal. At the time Rushing was employed, he was specifically instructed not to use the Ford pickup for his personal, non-business use, without the permission of Mr. Pattee, president of the company, or Mr. Andriesian, one of the managers of the company. During the approximate one and one-half years the deceased was employed by the company, Mr. Pattee or Mr. Andriesian had on occasion permitted the deceased to use the pickup for his personal business.

However, approximately two or three weeks prior to Rushing's death, Rushing had taken the Ford pickup without permission for his personal use, which resulted in the pickup being lost and returned by the California Highway Patrol. After this occurrence Mr. Pattee was in favor of dismissing the deceased, but after a discussion with Mr. Andriesian, it was decided to give Mr. Rushing a second chance. He was, however, specifically instructed that he was not to use the pickup for personal use without permission and that the pickup was to be parked and left, when not in business use, at the El Dorado Hotel in El Centro. Mr. Rushing was allowed to keep possession of the keys to this pickup together with the keys to all other vehicles owned by the company.

On Sunday, January 22, 1967, neither Mr. Pattee nor Mr. Andriesian were available for contact in the El Centro area. In the early morning hours of January 23, 1967, Mr. Rushing was involved in an automobile accident while driving the company Ford pickup on Highway 95 south of Yuma, Arizona, between Yuma and San Luis, Mexico. Injured in that accident were appellants, Nicholas and Elliott. As a result of this accident, Mr. Rushing died. Both Mr. Pattee and Mr. Andriesian denied granting Mr. Rushing permission to drive the Ford pickup on this occasion.

At the time of the accident, there was in force an automobile liability insurance policy issued by appellee, Carolina Casualty Company, naming the company and Mr.

Pattee as named insureds and covering the use and maintenance of the Ford pickup in question. This policy contained a normal omnibus clause also insuring persons using the described vehicle "with the permission" of the named insureds.

After being contacted by the Arizona Highway Patrol the morning following the accident, Mr. Pattee immediately contacted Carolina Casualty and gave them what details he had concerning the accident including the information that Rushing was using the vehicle without permission. All subsequent contact by Mr. Pattee with this matter, including the transmission of accident reports required by the Arizona Highway Department, was through Mr. Lynn DeBryne, an adjustor employed by Carolina Casualty Company.

This accident report, which is known as an SR–1 Accident Form requires the driver of the vehicle involved in an accident, or in the event of the incapacity of the driver, the owner of the vehicle, to report to the Financial Responsibility Section of the Arizona Highway Department, the circumstances surrounding the accident. At the bottom of the SR–1 form appeared the question "Did you have liability insurance in effect on the date of the accident?" If this question is answered in the affirmative, the balance of the form known as the SR–1A form, must be completed, listing the name of the insurance company, the policy number, and other pertinent information. On the reverse side of the SR–1A form, the following appears:

"DO NOT WRITE BELOW THIS LINE

| Mail To: ARIZONA HIGHWAY DEPARTMENT, MOTOR VEHICLE DIVISION, FINANCIAL RESPONSIBILITY BRANCH 2324 N. 20th AVENUE, PHOENIX, ARIZONA 85009 | FOR USE OF INSURANCE COMPANY ONLY |
|---|---|
| The undersigned company advises that with respect to the accident and the automobile liability policy or bond reported on the face of this form, such policy or bond WAS NOT in effect. Name of Insurance Company _____ | |
| NOTE: Unless this form is returned within 15 days, it will be assumed that the liability insurance claimed was in effect. | By _____ Title _____ Date _____ |

The SR–1A form is detachable from the SR–1 form by means of perforations. Upon receipt by the Financial Responsibility Section of the SR–1 form and if the SR–1A form has been filled out, the SR–1A form is detached and sent to the insurance company whose name appears thereon. In this case it was established that Mr. Pattee filled out an SR–1 form, that he answered the insurance question in the affirmative, that he listed Carolina Casualty Company as the insurance company, that the Financial Responsibility Section detached the SR–1A form and mailed it to Carolina Casualty, and that Carolina Casualty received the SR–1A form. Carolina

Casualty never returned the SR–1A form to the Financial Responsibility Section and based upon this non-return, the Financial Responsibility Section closed its file as a financial responsibility case.

Subsequently, appellants Nicholas and Elliott brought suit against the estate of Mr. Rushing, and the defense of that action was tendered to Carolina Casualty which undertook such defense under a reservation of rights agreement and immediately brought the present declaratory judgment action. The personal injury action has been held in abeyance pending the determination of this action.

The trial court held that Carolina Casualty had neither the duty to defend nor any liability for any judgments rendered against the estate of Mr. Rushing. This appeal followed.

The appellant raises two issues by this appeal:

(1) Is Carolina Casualty estopped to deny coverage for the accident involved because of its failure to return the SR–1A form to the Financial Responsibility Section?

(2) Did the facts of this case show that Rushing had implied permission to use the company pickup?

Appellants in contending the failure to return the SR–1A form estopped Carolina Casualty from denying coverage rely on the wording of A.R.S. § 28–1142, subsec. D which provides:

"Upon receipt of notice of the accident, the insurance company or surety company which issued the policy or bond shall furnish for filing with the superintendent a written notice that the policy or bond was not in effect at the time of the accident, if such was the case. *If no such notice is received, the policy or bond shall be deemed to be in effect for the purposes of this chapter.*" (Emphasis added.)

The question of whether the failure of an insurance company to respond to the Financial Responsibility Section under this statute imposes insurance coverage in an otherwise non-coverage situation was passed on by the Arizona Court of Appeals in National Union Insurance Company v. Chatterton, 9 Ariz.App. 1, 448 P.2d 873 (1968). In answering this question in the factual setting of owner-insured, driver-non-permissive, the Court held:

"We base our conclusion of nonliability upon the failure to find in this notice [statutory notices required by SR–1A] any claim or assertion of coverage for the nonpermissive driver. The driver of this vehicle claims no liability insurance coverage for this accident, and hence there is no basis for imposing liability upon the insurance company because of the report filed by this driver, the judgment debtor here.

"The form filed by James Marks [owner-insured] asked: 'Did *you* have liability insurance in effect on the date of the accident?' (Emphasis added.) To this question, James Marks truthfully answered in the affirmative. That the insurance claimed by James Marks was in effect is beyond question. The appellant insurance company honored its commitment to its insureds under its policy and provided to James Marks, and his father, a defense in this action.

"It would be an extremely harsh law, in view of this limited claim, that would impose liability upon the insurance company for failing to respond to a form notice which indicated that a response was needed only if the policy of bond reported to it '. . . *Was Not* in effect, and when the response form to be used stated that, if no response were made, '. . . it will be assumed that the liability insurance *claimed* was in effect.' (Emphasis added.)" 9 Ariz.App. at 5, 448 P.2d at 877.

Appellants attempt to make a factual distinction between the *National Insurance Company* case and the present case under discussion by asserting that in *National Insurance Company* the insurer never received the SR–1A form. A reading of the above quotation makes it clear that the court treated its discussion of the applicable law under the assumption that the insurer did in fact receive the notice directed to it, and therefore this distinction, if present, is of no consequence. The appellants further contend that the *National Insurance Company* case relies on cases from other jurisdictions which hold that "an erroneous response" by the insurance compa-

ny to the state agency does not impose liability, a situation not present in this case where no response was received by the Financial Responsibility Section.

The cases cited by the *National Insurance Company* case do not make this distinction. The underlying thread running through all these cases, be they from a "positive" system state (statutes requiring an affirmative response from the insurance company as to whether coverage is afforded or not), or a "negative" system state (statutes such as Arizona's, where failure to respond is indicative that coverage is afforded) is that the filing or failing to file an SR–1A form does not estop the insurer from denying coverage under the terms of its policy. Seaford v. Nationwide Mutual Ins. Co., 253 N.C. 719, 117 S.E.2d 733 (1961) is illustrative:

> "The purpose of the SR–21 form, . . . ., seems to be a means of protecting one's driving privilege by proving insurance in the minimum amount required by this State, and was not intended to be a contract. The required filing of the SR–21 form does not show an intent on the part of the Legislature that once the insurer files the form showing that the policy is in effect, such act affects the contractual rights of the parties, or precludes the insurance company from thereafter seeking to deny its liability under the policy." 117 S.E.2d at 737.

The purpose of the filing of the SR–1A form has been held to be merely an administrative procedure by which the responsible state agency may determine whether or not to invoke the sanctions of the Financial Responsibility Act, that is, suspension of the operator's license. Virginia Farm Bureau Mutual Insurance Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268 (1963). Such a purpose is in keeping with the Arizona statute which provides that "the policy . . . shall be deemed to be in effect for the *purposes of this chapter*," (emphasis added) that is, suspension or revocation of the operator's license.

This view that the filing or failing to file the necessary form with the Financial Responsibility Section does not preclude an insurer from denying liability is in accord with the great weight of authority in this country. Appellants have been unable to cite to the court any jurisdiction which holds that the filing or failing to file an SR–1A form alone estops an insurance company from denying liability under the terms of its policy, except the state of Wisconsin, which has, by legislation, changed this result. *See* Kurz v. Collins, 6 Wis.2d 538, 95 N.W.2d 365 (1959).

■ Whether we base our decision on the rationale that waiver or estoppel cannot be the basis for creating a contract of coverage where no such contract previously existed, Schaffer v. Mill Owners Mutual Ins. Co., 242 Or. 150, 407 P.2d 614 (1965); or that estoppel and waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained, Campbell v. Aetna Casualty & Surety Co., 211 F.2d 732 (4th Cir. 1954); or that estoppel or waiver do not apply without evidence of reliance and damage as a result of such reliance, Farm Bureau Mutual Automobile Insurance Co. v. Violano, 123 F.2d 692 (2d Cir. 1941), cert. denied 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942), or, as we do here, that our statute does not create such an estoppel or waiver, the result is the same. We therefore hold that the failure of an insurer to file an SR–1A form with the Financial Responsibility Section does not estop the insurer from raising defenses under its policy.

■ Turning to the question of whether there existed implied permission for Rushing to use the Ford pickup, the appellants point to the fact that his employers knew he had no personal vehicle for his use in the El Centro, California, area, that his employers had granted Rushing permission to use the vehicle for personal business on previous occasions, and that on the day in

question, those persons who could give permission to Rushing to use the vehicle were not available for contact by Rushing.

Assuming for the moment that sometime in the past, Rushing would have had implied permissive use of the Ford pickup for his personal affairs, that implied permission came to an abrupt halt some two weeks prior to the accident in question. On the occasion of Rushing taking the Ford pickup, losing it, and its being returned by the California Highway Patrol, he was told in no uncertain terms that he was not to use the pickup as his personal vehicle. If there had been any laxness on the part of Rushing's employers involving Rushing's personal use of the Company pickup prior to that time, that laxness came to an end and he was specifically told not to use the pickup for other than business usage—his continued employment being conditioned on this stipulation. Rushing broke that condition by taking the pickup for his personal use on January 23, 1967, the date of the accident.

Appellants argue that unavailability of Rushing's employers on the fatal day he took the pickup has some materiality. The argument seems to be that, if his employers were available, and if Rushing had asked permission to use the pickup, such permission would have been given. Of course, this is pure speculation, and in any event, unavailability to give permission cannot be substituted for actual permission.

The trial court found as a fact that Rushing had no actual permission to use the pickup on the day in question and the facts before the court did not give rise to any implied permission. Our review of the record leads us to the conclusion that both of these findings were amply supported by the evidence.

For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE, C. J., and DONOFRIO, J., concur.