**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-1571**

───────────

MULVEY CONSTRUCTION, INCORPORATED; ONE BEACON INSURANCE
COMPANY,

             Plaintiffs – Appellants,

and

DCI/SHIRES, INCORPORATED,

             Intervenor/Plaintiff

        v.

BITUMINOUS CASUALTY CORPORATION; BROWN & BROWN INSURANCE
AGENCY OF VIRGINIA, INCORPORATED,

             Defendants – Appellees.

───────────

Appeal from the United States District Court for the Southern
District of West Virginia, at Bluefield.  David A. Faber, Senior
District Judge. (1:07-cv-00634)

───────────

Argued:  January 29, 2014              Decided:  May 7, 2014

───────────

Before DUNCAN, KEENAN, and WYNN, Circuit Judges.

───────────

Affirmed in part and vacated in part and remanded by unpublished
opinion.  Judge Wynn wrote the opinion, in which Judge Duncan
and Judge Keenan joined.

───────────

**ARGUED:** Stuart A. McMillan, BOWLES RICE LLP, Charleston, West Virginia, for Appellants. Avrum Levicoff, LEVICOFF, SILKO & DEEMER, PC, Pittsburgh, Pennsylvania; Henry I. Willett, III, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellees. **ON BRIEF:** Thomas M. Hancock, BOWLES RICE LLP, Charleston, West Virginia, for Appellants. Pamela C. Deem, KAY CASTO & CHANEY, PLLC, Charleston, West Virginia, for Appellee Brown & Brown Insurance Agency of Virginia, Inc.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

A city utility worker was killed when the trench he was working in collapsed while he was repairing a sewage line at a construction site for a McDonald's restaurant in Bluefield, West Virginia. His estate brought a wrongful death action against the general contractor responsible for constructing the restaurant, Mulvey Construction, Inc. ("Mulvey"), and its subcontractor, DCI/Shires ("DCI"). In response, DCI's insurance company, Bituminous Casualty Corporation ("Bituminous"), refused to defend and indemnify Mulvey. That refusal prompted Mulvey and its insurer, One Beacon Insurance Company ("One Beacon"), to bring this action, which requires us to determine the scope of DCI's insurance policy from Bituminous. In particular, we must decide which state's law applies to this insurance contract dispute, whether Mulvey was covered by DCI's insurance, and whether the applicable statute of limitations bars Mulvey's and its insurer's third-party beneficiary claim.

For the reasons explained below, we affirm the district court's holding that Virginia law controls the contract issue, that Virginia law does not allow estoppel to extend an insurance policy's coverage, and that Appellants' third-party beneficiary claim is barred by the Virginia statutes of limitations. However, we reverse the district court's rejection of Appellants' insured contract and duty to defend claims and

3

remand this matter to the district court for further consideration.

## I.

In May 2002, DCI, a Virginia corporation, applied for a renewal insurance policy with Bituminous through Brown & Brown Insurance Agency ("Brown"), a Virginia insurance agency. DCI had a Virginia post office box as its mailing address, but DCI's physical office was in Bluefield, West Virginia. Bituminous issued DCI's renewal policy, which was effective from May 20, 2002 to May 20, 2003. Although Bituminous's headquarters is in Illinois, the policy identified its Richmond, Virginia branch office as the location for "the insurance company issuing this insurance" and referred inquiries to the Virginia State Corporation Commission's Bureau of Insurance. J.A. 50.

In July 2002, Mulvey entered into a subcontract agreement with DCI for a portion of the construction of a McDonald's restaurant in Bluefield, West Virginia. Under the subcontract agreement, DCI agreed to list Mulvey and McDonald's as additional insureds on its insurance policy with Bituminous. To satisfy this requirement, DCI sent the subcontract agreement to Brown. In July and August 2002, Brown issued certificates of insurance stating that Mulvey and McDonald's were additional

4

insureds on DCI's insurance policy with Bituminous. The certificates of insurance also stated that "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." J.A. 44, 259-64. DCI's insurance policy was not amended to add Mulvey and McDonald's as additional insureds. In October 2002, Brown sent a copy of the insurance policy to DCI.

In January 2003, a city employee was attempting to repair a pipe next to the McDonald's restaurant when the trench he was in collapsed and killed him. His estate sued McDonald's, Mulvey, and DCI for wrongful death, alleging that the retaining wall at the McDonald's had been negligently constructed. Mulvey and McDonald's requested that Bituminous defend them in the wrongful death action. Bituminous refused, stating that neither Mulvey nor McDonald's was an additional insured on DCI's policy. Mulvey and McDonald's settled the wrongful death suit, and Mulvey's insurer, One Beacon, paid the settlement on behalf of McDonald's and Mulvey.

Appellants Mulvey and One Beacon initiated an arbitration action against DCI in New York asserting indemnification and breach of contract claims. In 2007, Appellants brought this action against Bituminous and Brown seeking a declaratory judgment that Mulvey was entitled to coverage from Bituminous

5

for the underlying action and payment of settlements and legal fees. The complaint (and later the amended complaint) included a breach of contract claim against Bituminous, an estoppel claim against Bituminous and Brown, and a third-party beneficiary claim against Brown. Bituminous moved for summary judgment on these claims. The district court addressed these claims in separate summary judgment orders during the case and the district court's conclusion of each of these individual claims did not resolve the other claims.

The district court ruled that Virginia law applied and granted Bituminous summary judgment on Appellants' breach of contract claim. However, the district court allowed supplemental briefing on the estoppel and insured contract claims under Virginia law. Mulvey and One Beacon had originally conceded that the insurance contract was formed in Virginia, but, after the district court granted summary judgment to Bituminous on the breach of contract claim, moved to amend the judgment arguing that the policy was issued in West Virginia. The district court ordered them to offer evidence supporting their change of view on the location of contract formation. Appellants provided affidavits stating that a DCI employee was assigned to gather mail from DCI's Virginia post office box and carry it to the offices in West Virginia. The district court

reaffirmed its earlier ruling that Virginia law governed the case.

Brown also moved for summary judgment on Appellants' third-party beneficiary claim, arguing that the claim was barred by the statute of limitations. The district court agreed and granted summary judgment to Brown.

The district court also granted summary judgment to Bituminous on Appellants' estoppel claim and held that Virginia law does not allow estoppel to extend insurance coverage, especially where the disclaimer language in the certificates was "clear and unambiguous[.]" J.A. 625-28. However, the district court stayed the case pending completion of the ongoing New York arbitration before considering the insured contract theory.[1] After Appellants dismissed the New York arbitration, they renewed their motion for summary judgment on the insured contract theory. The district court rejected the theory and granted summary judgment to Bituminous. Mulvey and One Beacon timely appealed these rulings.

---

[1] The amended complaint does not contain an insured contract claim as one of the specified counts. However, the amended complaint sought a declaration that "Mulvey's subcontract agreement with [DCI] is an insured contract under DCI's Bituminous policy so that Mulvey stands in the shoes of DCI for coverage purposes" and that "Bituminous owes Mulvey a duty to indemnify and defend it as an additional insured with an insured contract on its policy of insurance covering DCI . . . ." J.A. 197.

7

## II.

First, Appellants argue that the district court erred in ruling that Virginia law, rather than West Virginia law, applied in this case. Second, Appellants argue that the district court erred in holding that estoppel did not apply and that Mulvey could not rely on the certificates of insurance to establish coverage under DCI's insurance policy. Third, Appellants argue that the district court erred in rejecting their insured contract theory; namely, that the subcontract between Mulvey and DCI did not trigger a duty to defend requiring Bituminous to defend Mulvey and McDonald's in the wrongful death action. Finally, Appellants argue that the district court erred in applying Virginia's statute of limitations and granting summary judgment on the third-party beneficiary claims to Bituminous. We address each issue in turn.

## III.

We review de novo the district court's choice of law determination. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231–34 (1991). When a district court is considering a case based on diversity jurisdiction, the court must apply the forum state's conflict of laws rules. Klaxon Co. v. Stentor Elec.

8

Mfg. Co., 313 U.S. 487, 496 (1941). Here, the forum state is West Virginia; thus, West Virginia's choice of law principles must be applied.

In West Virginia, generally, the law of the state where an insurance contract was formed governs contract disputes:

> "In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state."

Joy Tech., Inc. v. Liberty Mut. Ins. Co., 421 S.E.2d 493, 496 (W. Va. 1992) (quoting Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 390 S.E.2d 562, 563 (W. Va. 1990)). We thus begin our inquiry with an examination of where the pertinent contract was formed.

A.

Under West Virginia law, "[a] contract is made at the time when the last act necessary for its formation is done, and at the place where the final act is done." Carper v. Kanawha Banking & Trust Co., 207 S.E.2d 897, 901 (W. Va. 1974) (syllabus, pt. 8)[2] (citing Restatement of Contracts § 74 (1932));

---

[2] "Pursuant to West Virginia's Constitution, the Supreme Court of Appeals of West Virginia articulates new points of law through its syllabus." Hoschar v. Appalachian Power Co., 739 F.3d 163, 174 n.5 (4th Cir. 2014) (citing Walker v. Doe, 558 S.E.2d 290, 296 (2001)).

9

see also Tow v. Miners Mem'l Hosp. Ass'n, 305 F.2d 73, 75 (4th Cir. 1962) ("Examining [West Virginia] law, we find that the contract here in question was made in New York because there the last event occurred necessary to make a binding agreement[.]").

The West Virginia Supreme Court has observed that "[a]n insurance contract, similar to other contracts, 'is an offer and acceptance supported by consideration.' . . . The application for insurance is the offer, which the insurer then decides to accept, reject or modify. The insurer then issues a policy or certificate of insurance that evidences the insurance contract." Keller v. First Nat'l Bank, 403 S.E.2d 424, 427 n.5 (W. Va. 1991) (quoting Warden v. Bank of Mingo, 341 S.E.2d 679, 682 (1985)). Therefore, where a party has made an offer to the insurance company by applying for insurance, the insurance company's issuance of the policy constitutes its acceptance.

Appellants argue that the district court erred in concluding that Virginia law governs the case. Specifically, they contend that the insurance contract between DCI and Bituminous was formed in West Virginia because DCI's principal office is located there. Appellants contend that DCI accepted the contract in West Virginia when the insurance policy was opened in DCI's West Virginia office or when the premium check was signed in DCI's West Virginia office. We disagree.

10

Under West Virginia law, DCI's renewal application constituted the offer to create the insurance contract. In response, Bituminous issued the insurance policy, thus, accepting DCI's offer. At that point, the contract was formed according to West Virginia law. Neither the opening of the copy of the policy in DCI's West Virginia's office nor the first premium payment constituted the final act of contract formation. The issuance of the policy from Bituminous's Virginia branch office represented Bituminous's acceptance of DCI's offer, the last act necessary to form the insurance contract. Thus, Virginia law applies—unless another state has a more significant relationship or Virginia's law contravenes West Virginia public policy.

## B.

Regarding whether another state has a more significant relationship to the transaction and parties than Virginia, the West Virginia Supreme Court has looked to the Restatement (Second) of Conflict of Laws and identified several non-exclusive factors for courts to consider:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,

11

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Triangle*, 390 S.E.2d at 567. The West Virginia Supreme Court placed great emphasis on uniformity and predictability, holding that

> "certainty, predictability and uniformity of result," as well as "ease in the determination and application of the law to be applied" is essential to the interpretation of an insurance policy when the law is not otherwise chosen by the parties. Given the increasingly complex nature of the insurance industry, we believe that the needs of the "interstate" system of insurance require that law be applied in the most uniform and predictable manner possible.

*Id.* The Court also looked to the parties' reasonable expectations, examining whether "the insurance company demonstrated any reasonable expectation at the time the contracts were entered into that any litigation over the policy would be based upon West Virginia law." *Id.*

The West Virginia Supreme Court discussed the significant relationship prong in *Joy Technologies, Inc. v. Liberty Mutual Insurance Company*, 421 S.E.2d 493 (W. Va. 1992). In that case, a company that cleaned and repaired mining machinery in West Virginia polluted West Virginia property. The company was sued for property damage and personal injuries, and the insurer

12

argued that an exclusion applied.  Joy, 421 S.E.2d at 493-96.

Crucial to the exclusion issue was what state's law applied.

The West Virginia Supreme Court recognized the Triangle precedent and identified factors that weighed in favor of applying the law of the state of contract formation—Pennsylvania.  Id. at 496.  However, the Court ultimately was persuaded to apply West Virginia law because of the nature of the suit.  The West Virginia Supreme Court's reasoning focused on the nature of the suit—toxic pollution—and its close link to location:

> [t]he action in the present case arises out of the expenditures of monies for remediating damage caused by pollution to property in West Virginia, and it is rather clear that the pollution arose from operations which were conducted in West Virginia and involved a facility located in West Virginia.  Thus, the injury occurred in West Virginia, the instrumentality of injury was located in West Virginia, and the forum selected to try the issues was West Virginia.  These factors suggest that West Virginia has had a very significant relationship to the transaction and the parties. In fact, the relationship would appear to be more substantial than that of Pennsylvania, where the contract was formed.

Id. at 496-97.  For its reasoning, the West Virginia Supreme Court looked to a New Jersey pollution case, in which the New Jersey Appellate Division held that New Jersey law controlled a dispute about insurance "purchased to cover an operation or activity, wherever its principal location, which generates toxic wastes that predictably come to rest in New Jersey[.]"  Gilbert

13

Spruance Co. v. Pa. Manufacturers' Ass'n Ins. Co., 603 A.2d 61, 65 (N.J. App. Div. 1992). Similarly, the Joy court decided against applying Pennsylvania law because Liberty Mutual's position regarding the exclusion of coverage would be "inconsistent with, and contrary to, the public policy of [West Virginia]." Id. at 497.

Appellants argue that under Joy, West Virginia law must apply. Specifically, Appellants claim that, as in Joy, the location and instrumentality of the injury was in West Virginia and the forum selected to try the issues was West Virginia. Yet we find Joy easily distinguishable.

It is hard to imagine cases with stronger local ties than environmental cases in which toxic pollution has occurred and local interests in remediation and compensation are paramount. But environmental harm and pollution are not at issue here. Rather, this case involves a commercial liability insurance contract that covers DCI's construction work in multiple states. Although the tragic accident in this case occurred in West Virginia and killed a citizen of that state, the West Virginia Supreme Court has downplayed the importance of injury location compared to the place of contract formation. See Nadler v. Liberty Mut. Fire Ins. Co., 424 S.E.2d 256, 262 (W. Va. 1992); Lee v. Saliga, 373 S.E.2d 345, 352 (W. Va. 1988); see also Howe v. Howe, 625 S.E.2d 716, 723 (W. Va. 2005) (affirming the lower

14

court's finding that Ohio had a more significant relationship to the parties and transactions because the "only relationship West Virginia [had] to the parties or transactions at issue [was] the 'mere fortuity' that the accident at issue occurred" there); Johnson v. Neal, 418 S.E.2d 349, 351 (W. Va. 1992) (per curiam) ("In the present case, the insurance policy was issued in Virginia by a Virginia company to a Virginia resident. West Virginia's relationship to the transaction based on the situs of the accident and the residence of the uninsured motorist is minor.").

In addition, the reasonable expectation of the parties to the contract must be considered. The parties to the insurance contract included Bituminous, an Illinois corporation operating out of a Virginia branch office, DCI, a Virginia corporation that used Brown, a Virginia insurance agent, to secure the renewal insurance contract. Although the construction project and accident were in West Virginia, the centerpiece of this litigation is the interpretation of the insurance contract, which was formed in Virginia. Thus, the parties to the contract reasonably should have expected that Virginia law would apply. In sum, "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied" strongly support the application of Virginia law. Triangle, 390 S.E.2d at 567. And we agree with the district

15

court that West Virginia did not have a more significant relationship to the transaction or parties than Virginia.

C.

The third element of the conflict of law analysis requires the court to determine whether Virginia law is contrary to West Virginia's public policy. This Circuit has recognized that West Virginia's public policy exception "is necessarily a narrow one, to be invoked only in extraordinary circumstances." Yost v. Travelers Ins. Co., 181 F.3d 95, at *6 (4th Cir. June 21, 1999) (unpublished but orally argued). The West Virginia Supreme Court has recognized that "[t]he mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state." Nadler, 424 S.E.2d at 258 (syllabus pt. 3). The West Virginia Supreme Court instructed lower courts not to refuse to apply foreign law "unless the foreign law is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to [West Virginia's] own people." Id. at 265 (quotation marks omitted).

16

Appellants argue that applying Virginia law would be contrary to West Virginia's public policy, and they assert a variety of policy considerations including: 1) "quickly determining which insurance is primary," 2) "encourag[ing] the resolution of controversies by contracts of compromise and settlement," 3) "regulating insurance practices in regard to West Virginia residents, West Virginia accidents, and how people in West Virginia are treated;" and 4) "hold[ing] insurers accountable in a court of law when they wrongfully deny coverage" and enforcing indemnity agreements. Appellants' Br. at 22-24.

Appellants made no public policy arguments before the district court. J.A. 392 ("[T]he court does not find (nor do plaintiffs argue) that the law of Virginia is contrary to the public policy of West Virginia."). In any event, their arguments are unavailing. Appellants have not shown how Virginia's public policy differs on any of these grounds or how Virginia's law is "contrary to pure morals or abstract justice." Nadler, 424 S.E.2d at 265 (quotation marks omitted).

Consequently, Appellants have failed to show that we should depart from the default rule that the contract should be governed by the laws of Virginia—the state of formation. West Virginia does not have a more significant relationship to the transaction, and Virginia law is not contrary to West Virginia

17

public policy. Therefore, we affirm the district court's choice of law determination.

IV.

With their next argument, Appellants contend that Bituminous should be estopped from refusing to defend Mulvey and McDonald's in the wrongful death suit because Brown issued certificates of insurance stating that Mulvey and McDonald's were additional insureds on DCI's policy with Bituminous. We review the district court's grant of summary judgment de novo. FDIC v. Cashion, 720 F.3d 169, 173 (4th Cir. 2013).

Under Virginia law, a party seeking to invoke the doctrine of estoppel must prove by "clear, precise, and unequivocal evidence" the following elements:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc., 266 S.E.2d 887, 890 (Va. 1980). Crucially, however, Virginia precedent reflects that estoppel may not be used to extend the coverage of an insurance contract. Norman v. Ins.

18

Co. of N. Am., 239 S.E.2d 902, 908 (Va. 1978) ("The general rule, which we approve, is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded.") (quoting Sharp v. Richmond Life Ins. Co., 183 S.E.2d 132, 135 (Va. 1971)).

In Norman, the Virginia Supreme Court referred to two automobile insurance cases where the insurance companies filed a form stating that "its policy was in force and effect and covered the driver[s]," but the Virginia Supreme Court found that these statements "did not estop the company from denying coverage when in fact there was no coverage." Id. (citing Va. Farm Bureau Mut. Ins. Co. v. Saccio, 133 S.E.2d 268 (1963) and Va. Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 133 S.E.2d 277 (1963)). However, the Virginia Supreme Court has not squarely addressed whether an insurance company is estopped from denying coverage in a situation such as this case: where certificates of insurance have been issued stating that third parties were added as additional insureds on the policy, but where the third parties were never actually added to the underlying insurance policy.

Courts around the country are split regarding whether insurers can be estopped from denying coverage when a certificate of insurance that identified a third party as an additional insured has been issued. Some courts have deemed the

19

insurer estopped from denying coverage. See, e.g., Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga., 337 F. Supp. 2d 1339, 1355 (N.D. Ga. 2004); Blackburn, Nickels & Smith v. Nat'l Farmers Union, 482 N.W.2d 600, 604 (N.D. 1992). Significantly, West Virginia is one of the states that has held that "a certificate of insurance is evidence of insurance coverage" and that

> because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

Marlin v. Wetzel Cnty. Bd. of Educ., 569 S.E.2d 462, 472-73 (W. Va. 2002).

Other courts, however, have held that a certificate of insurance that expressly states that it does not alter the coverage of the underlying policy will not be deemed to change the policy. In such states, therefore, a party may not rely on estoppel to assert that it is covered under the policy. See e.g., Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882, 889 (10th Cir. 1991); T.H.E. Ins. Co. v. City of Alton, 227 F.3d 802, 806 (7th Cir. 2000); TIG Ins. Co. v. Sedgwick James of Washington, 184 F. Supp. 2d 591, 597-98 (S.D. Tex. 2001); G.E.

20

*Tignall & Co., Inc. v. Reliance Nat. Ins. Co.*, 102 F. Supp. 2d 300, 304 (D. Md. 2000).

Here, the district court cited Norman in holding that, under Virginia law, the certificates of insurance could not be relied upon to establish coverage, particularly given that the certificates included such a "clear and unambiguous" disclaimer. J.A. 628. The district court, therefore, concluded that Bituminous was not estopped from denying coverage.

The certificates of insurance included the direct and specific disclaimer that the certificates are provided as "A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." J.A. 44, 259-64. We, like the district court, must conclude that Virginia would not recognize the use of estoppel to change the policy in the circumstances of this case. We find instructive not only Norman, but also *Blue Cross and Blue Shield of Virginia v. Wingfield*, 391 S.E.2d 73 (Va. 1990). In that case, the Virginia Supreme Court directly rejected the plaintiff's estoppel claim, which was based on a brochure that the insurance company sent to him outlining the policy's benefits. The brochure included a clear disclaimer that the brochure was not a contract and that the provisions of the contract governed any discrepancies. *Wingfield*, 391 S.E.2d at 74. The trial court

21

granted Wingfield damages "because of the difference in the language in the brochure furnished [Wingfield] and that in the contracts." Id. (alteration in original) (quotation marks omitted). The Virginia Supreme Court disagreed, holding that

> the trial court's application of the doctrine of estoppel, requiring payment of benefits beyond the limited contractual time, extended coverage to include risks not covered by the policy. In doing so, the court erroneously brought "into being a contract of insurance where there was none."

Id. at 75 (quoting Norman, 239 S.E.2d at 908). Guided by the Virginia Supreme Court's rulings in Norman and Wingfield, we hold that the district court did not err in refusing to apply estoppel to extend this insurance policy's coverage beyond its terms.

V.

With their next argument, Appellants claim that summary judgment was inappropriate because, even if Mulvey was not an additional insured, Bituminous still had a duty, under the policy's insured contract provision, to defend them in the wrongful death litigation.

Specifically, DCI's insurance policy states that damages arising from DCI's contractual assumption of liability are excluded. But that exclusion does not apply to liability for

22

damages "[a]ssumed in a contract or agreement that is an 'insured contract', . . . ." J.A. 105. The policy defines insured contract as "[t]hat part of any other contract or agreement pertaining to your business . . . under which [DCI] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." J.A. 115. In the subcontract between DCI and Mulvey, DCI agreed to

> indemnify and hold harmless . . . [Mulvey] . . . from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or arising from performance of [DCI's] Work under this Agreement, provided such claim . . . is attributable to bodily injury, sickness, disease or death[,] or to injury to or destruction of tangible property . . . including the loss of use resulting therefrom, to the extent caused in whole or part by any neglect act or omission of [DCI] . . . regardless of whether it is caused in part by a party indemnified hereunder.

J.A. 41. Appellants argue that this provision renders the subcontract an insured contract because DCI assumed the tort liability of Mulvey.

Assuming for the sake of argument that the subcontract was an insured contract, we nevertheless agree with the district court that the indemnitee, Mulvey, was not entitled to coverage under the insurance policy because no language added Mulvey as an additional insured or as a third-party beneficiary.

23

Appellants attempt to rely on Uniwest Construction, Inc. v. Amtech Elevator Services, Inc., 699 S.E.2d 223 (Va. 2010), *withdrawn in part on reh'g*, 714 S.E.2d 560 (Va. 2011). In that case, a general contractor, Uniwest, engaged subcontractors, including Amtech, to assist in building renovation work. The subcontract required Amtech to name Uniwest as an additional insured under its liability insurance policies. Id. at 225-26. The pertinent policy included as an insured "[a]ny person . . . to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy but only with respect to . . . liability arising out of operations conducted by you or on your behalf . . . ." Id. at 226. Amtech's insurer refused to defend and indemnify Uniwest in a suit by the estate of a deceased employee and an injured employee. The Virginia Supreme Court held that the insurer was required to defend and indemnify Uniwest, not merely because the subcontract between the parties required Amtech to defend and indemnify Uniwest. Importantly, the Court found that Amtech's policy contained language sufficient to make Uniwest (and any similarly situated contracting party) an additional insured under the policy as well. Id. at 232.

Here, the district court reviewed Uniwest and acknowledged that, as in Uniwest, the subcontract required DCI to indemnify Mulvey. However, the district court underscored "the critical

24

difference between the two policies at issue: under [the <u>Uniwest</u> policy] any person to whom the insured becomes obligated under an Insured Contract becomes an additional insured . . . . The Bituminous Policy has no similar provision." J.A. 713. Although we must agree with this analysis, we conclude that it is incomplete.

Notably, the district court did not address the insurance policy's Supplementary Payments section. Although that section does not make Mulvey an additional insured, it states that: "[i]f [Bituminous] defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit', we will defend that indemnittee if all of the following conditions are met[.]" J.A. 110. The requisite conditions include, among others: "the insured has assumed the liability of the indemnitee in . . . an 'insured contract';" "[t]his insurance applies to such liability assumed by the insured;" "the obligation to defend . . . that indemnitee[] has also been assumed by the insured in the same 'insured contract[.]'" J.A. 110-11. If these conditions have been met, then Mulvey is entitled to Bituminous's defense and the district court's grant of summary judgment to Bituminous was in error because the insurance company would not be entitled to judgment as a matter of law.

25

Based on the record before us, it appears that at least some of these conditions may be met. Under these circumstances, we cannot affirm the district court's grant of summary judgment without the benefit of its analysis of a directly relevant section of the insurance policy. We therefore vacate the district court's summary judgment order on the insured contract theory and remand with specific instructions to the district court to address whether the requirements of this provision have been met and whether, specifically taking the provision into consideration, Bituminous had a duty to defend Mulvey in the underlying lawsuit.

## VI.

Finally, Appellants contend that West Virginia's, and not Virginia's, statute of limitations applies and that the district court erred by dismissing their third party beneficiary claim on the basis of Virginia's shorter statute of limitations period.[3] Appellants contend that the certificates of insurance that Brown

---

[3] Appellants also contend that the district court abused its discretion by allowing Brown to untimely amend its answer to include a statute of limitations defense. Appellants' Br. at 51-52. However, upon close review, we reject the appellants' claim and find that the district court did not abuse its discretion when it ruled that appellants had failed to show any prejudice arising from the district court's decision to grant Brown leave to amend its answer. See J.A. 582-87.

26

sent to DCI qualify as a written contract between Brown and DCI to add Mulvey to the Bituminous policy.

West Virginia has a five-year statute of limitations for oral contracts and a ten-year statute of limitations for written contracts. W. Va. Code § 55-2-6. By contrast, Virginia has a three-year statute of limitations for oral contracts and a five-year statute of limitations for written contracts. Va. Code § 8.01-246(2), (4).

Notably, however, West Virginia has what is known as a borrowing statute. It provides that "[t]he period of limitation applicable to a claim accruing outside of this State shall be either that prescribed by the law of the place where the claim accrued or by the law of this State, whichever bars the claim." W. Va. Code § 55-2A-2. Appellants' third-party beneficiary claim is premised on Brown's alleged failure to add Mulvey as an additional insured on DCI's policy. Appellants have not alleged that Brown, a Virginia insurance agent, breached an agreement to add Appellants to the insurance policy in a different state than where Brown conducts its business, Virginia. By operation of the borrowing statute, then, Virginia's shorter statute of limitations applies here.

The district court deemed any contract between Brown and DCI to add Mulvey to the Bituminous policy oral and barred by the statute of limitations. The Virginia Supreme Court has

27

recognized that for a contract to qualify as a written contract for statute of limitations purposes, the contract "must . . . show on its face a complete and concluded agreement between the parties." Newport News, H. & O. P. Dev. Co. v. Newport News St. Ry. Co., 32 S.E. 789, 790 (Va. 1899). Here, on their face, the certificates of insurance do not represent a written contract. Rather, they state that they were issued for "INFORMATION ONLY" and specifically "CONFER[RED] NO RIGHTS UPON THE CERTIFICATE HOLDER." J.A. 44, 259-64. We agree with the district court that if there was any contract requiring Brown to obtain insurance, then it was an oral contract and thus, the three-year statute of limitations under Virginia law applied.

Further, even assuming for the sake of argument that the contract was written and that the longer statute of limitations applied, this claim would still be barred under Virginia law. Any breach of that contract occurred no later than August 2002 because the final certificate of insurance—the contract Appellants assert required their being insured by Bituminous—was issued on August 9, 2002, and yet Appellants were never added to the insurance. But Appellants did not bring the third-party beneficiary claim until October 11, 2007—after more than five years had passed. Under Virginia law, the statute of limitations accrues on the date of breach, not the date of the resulting damage is discovered. Va. Code Ann. § 8.01-230

28

("[T]he right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered[.]"). Thus, the third party beneficiary claim would be barred by the statute of limitations, even assuming that the longer, written-contract statute applied.

In response, Appellants argue that Virginia law allows tolling of the statute of limitation when a defendant misleads a plaintiff into delayed filing. And indeed, the Virginia Supreme Court has recognized tolling in the face of affirmative misrepresentation:

> "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action. Concealment of a cause of action preventing the running of limitations must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence, and mere silence is insufficient. There must be something actually said or done which is directly intended to prevent discovery."

Newman v. Walker, 618 S.E. 2d 336, 338 (Va. 2005) (quoting Culpeper Nat'l Bank v. Tidewater Improvement Co., 89 S.E. 118, 121 (Va. 1916)). But Appellants have failed to show that Appellees took any affirmative actions to meet this bar.

29

Appellants also argue that Virginia law allows for tolling "when the failure to procure insurance claim was submitted to arbitration." Appellants' Reply at 27. However, the arbitration proceedings began in 2006, after the applicable three-year statute of limitations for oral contracts expired in August 2005. Thus, Appellants' statute of limitations arguments fail, and we affirm the district court's grant of summary judgment to Brown on the third-party beneficiary claim.


VII.

For the foregoing reasons, we affirm in part and vacate in part the judgment of the district court and remand for further proceedings.


<u>AFFIRMED IN PART</u>
<u>VACATED IN PART AND REMANDED</u>